City of Alton v. Illinois Transportation Company.

THE CITY OF ALTON, Pltff in Error, v. THE ILLINOIS TRANSPORTATION COMPANY, Defts in Error.

### ERROR TO MADISON.

A construction which requires that an entire clause of a deed should be rejected, will not be adopted, except from unavoidable necessity.

When a deed refers to a plat, which has upon its face that to which the expressions of the deed can apply, the court will connect the two, rather than reject the words of the deed.

If a deed will admit of two constructions, it should be construed against the grantor.

Public rights are not barred by our statute of limitations, which requires certain real actions to be brought within seven years after possession taken by a defendant.

When lots are dedicated to the public for particular purposes, they may be improved and controlled for such purposes, but they cannot be aliened or sold, nor has a city the exclusive use thereof.

This is an action of ejectment to recover possession of an easement in a lot in the city of Alton, brought by the city to try the right of the public to the same as a public highway, landing or common, dedicated to the public use,—described as that lot which is embraced within the following boundaries, to wit: Beginning at a point on the South side of Front street, in said city, 120 feet West of the West side of Easton street, in said city; thence on the said South line of Front street, Westwardly, 120 feet; thence Southwardly, along the East line of Alby street, extended to the Mississippi river; thence down the line of said river, 120 feet; thence Northwardly, to the place of beginning." The defendants filed the plea of Not Guilty, &c.; and thereupon, a statement of facts in the case, agreed upon by the parties, was filed, and the same was submitted to the Court for its decision    The f acts thus agreed upon, are substantially as follows, to wit:

1st. That fr. Secs. 11 and 14, T. 5 N., R. 10, W., were patented to Rufus Easton, on the 16th of June, 1850.

2d. That on the 1st of June, 1818, Rufus Easton, claiming to be sole owner of said land situated in Madison county, Illinois, made a plat of the same by the name of "The town of Alton," which is made a part of the record, as Exhibit (A); which plat, together with the memorandums of the same, was duly recorded on the 4th day of April, 1818, in the Recorder's office for said county.

EXHIBIT. A.

True Meridian

Variation 8° E

Henri St. 99½

Langon St. 66½

George St. 66½

Alton St. 66½

Euston St. 82½

Alley Street 66½

Market Street 132½

FRONT STREET 100 FEET

2d the STREET 80 FEET

COMMON OR PROMENADE TO BE USED IN COMMON.

RESERVED

RESERVED

GROUND FOR USE OF LANDING

MISSISSIPPI RIVER

3d. That subsequent to the recording of the plat, William B. Whitesides, James Reynolds, and others, claiming an interest in these lands, commenced a suit against Easton, concerning the same; and it was compromised by the parties, by Easton's executing and delivering to said Whitesides and Reynolds, February 25, 1821, a deed of conveyance, which was duly recorded on the 11th of December, 1821, for certain lands and lots in and at said Alton, and in said fractional section 14.

By said deed, Easton sold and conveyed to Reynolds and Whitesides, in fee, 80 acres, adjoining said town, and in said Sec. 14, expressly referring to said plat of the town of Alton, theretofore laid out by him, and recorded as aforesaid; also 107 lots laid down on said plat and embraced in the limits of said town, among which lots are Lots 3, 4 and 5, in Block 4; Lots 5 and 6, in Block 6; Lots 3, 4 and 14, in Block 7; Lots 1, 3 and 13, in Block 8; Lots 3, 6 and 7, in Block 13, &c., and " all things of right thereto appertaining." In this deed, Easton reserves to himself, his heirs and assigns, the exclusive right of ferrying across the Mississippi river to and from said lands; and therein said Easton expressly " *covenants and agrees, that all the Lots for public, scholastic and religious purposes, for a public landing, or any reservations of common, East of the Fountain creek, as designated on the plat aforesaid of said town; and, particularly, the land that lies between Front street and the river Mississippi as designated in said plat, fronting on the river between the said Fountain creek and Henry street, shall be and forever remain a public landing place, and shall be and remain for the use of the public as designated on said plat, excepting and reserving to said Rufus Easton and his heirs, forever, the exclusive right of a ferry or ferries, on and from said land so made common.*" Said deed contains covenants of warranty against the title and claims of Easton or his heirs, and others claiming under him or them—and states, that " It is explicitly understood and expressly agreed, by and between the parties aforesaid; that they had *conflicting claims* or *titles* to said lands and lots, and that for the purpose of compromise, they, the said parties, agreed to mutually relinquish one to the other, the part *allowed* to *him* or *them*, in the compromise; and that said deed is the relinquishment of the said Easton, on his part, to the said Whitesides and Reynolds, their heirs and assigns, to the *whole* of the lands thereby conveyed," &c.

And as part of said compromise, by said Whitesides and Reynolds, and their respective wives, on the said 26th day of February, 1821, executing and delivering to said Easton, their joint deed of conveyance of the date last named, wherein, in consideration of $1, and also "For and in consideration that the said Rufus Easton had, by his deed of that date, conveyed and released and relinquished, to the said Whitesides and Reynolds, certain lots and parcels of land in that" (Easton's) deed mentioned and described, they sold and conveyed, &c., to said Easton, and to his heirs and assigns, forever, the following described lands, in said county of Madison, to wit: describing that part of fr. Sec. 14, lying East of Henry street, and part of the S. E. qr of Sec. 11, containing 200 acres, more or less; and the whole of S. W. qr of Sec. 12; all in town 5 N., R. 10, W., containing 100 acres, with the appurtenances, &c., with "the license and right of ferrying to and from the same, obtained by said Whitesides and Reynolds and one Robert Sinclair, or that of all or either of them," with covenants of warranty that they had not granted away the land thus conveyed; providing, however, and excepting from the operation of said deed of them, all or any of the lots in the town of Alton, mentioned and contained in the deed above referred to from said Easton to said Reynolds and Whitesides, specifying them as they are specified and described in said Easton's deed to them, according to the plot of said town of Alton, made by said Easton, and recorded as aforesaid; which plot as recorded, the said Whitesides and Reynolds, for themselves, their heirs and assigns, do thereby ratify and confirm in every particular; but said presents, it was expressly declared therein and thereby, were "not to be construed to convey to, or vest in, said Easton any exclusive interest in any of the streets, lots for public or scholastic or religious purposes, for a public landing, or any reservations of commons to the *East* of Fountain creek, in said town of Alton, as designated on the plat of said town; but that *all the ground from the public landing inclusive, as designated on said plat, to Henry street, and that lies between Front street and the river Mississippi, should forever be and remain a public landing, for all persons whatsoever,* except for a ferry landing; which right of a ferry landing was to be and remain in the said Rufus Easton, his heirs and assigns exclusively, forever."

In said deed it is also recited that, at some time theretofore,

said Easton had, by a power of attorney, authorized Lewis Beck to sell all the lots of ground in the deed enumerated, as also some others mentioned and situate in said town of Alton, as plotted by said Easton and recorded as aforesaid; and said Reynolds and Whitesides covenant to confirm and ratify the sales then made, or which may be made by the 1st day of April next following, by said Beck, under said authority. Reynolds and Whitesides also covenant against all claims or titles derived through or under them or either of them. The deed last named has also this clause, to wit: "And it is further explicitly understood and expressly agreed by and between the parties, that they had conflicting claims or titles to the land and lots therein expressed; and that for the purpose of compromise, the parties had agreed to mutually relinquish to the other of them the part allowed to him in the compromise, and that the said deed is the relinquishment, on the part of said Whitesides and Reynolds, to the said Easton, to the whole of the lands thereby conveyed by said Reynolds and Whitesides to said Easton;" provided, however, they were to be subject to the damages provided for in said deed in case they did not purchase back whatever of the lots and land therein mentioned and which they might have sold, &c., as before duly recorded April 10, 1821. Subjoined to the last mentioned deed is the written assent under seal of Nathaniel Pope, John Reynolds, Joseph Conway, John D. Cook, and Ninian Edwards, and their surrender to Easton, "all claims and pretensions, which they might or could assert to the premises" in said deed "granted and conveyed."

That the grantors and grantees of said deeds together held all and every claim or title to said lands, except the rights thereto vested in the public by the making and recording of the plat of the town of Alton, within mentioned, and expressly recognized by the parties to said deeds, whatever they may be; but the defendants contend that the land in plaintiff's declaration described is not so recognized, while the plaintiffs contend it is so recognized, and that by the execution and recording of the same plat and deed, a perfect title to the lands respectively therein described, was vested in the several grantees therein mentioned.

4th. That on the 20th of Sept., 1821, the bank of Saint Louis recovered judgment against said Easton for $1,149 debt, and $91 92 damages and costs. That on the same day, Wm. Russell

obtained a judgment against said Easton for $957 18 debt, and $26 51 damages and costs, both in the Madison Circuit Court, and executions were issued thereon, and the lands first within described, with other lands, were levied on; and that by virtue of the two executions thus issued—one on each of said judgments—Wm. B. Whitesides, then Sheriff of said county, advertised on the 8th of February, 1822, that he should expose to public sale, at, &c., on the 2d of March then next, all the right, title, and interest of said Easton to the following property, to wit: fr. Secs. 14, 11, 12, and 13, T. 5, N., R. 10; also fr. Sec. 18, T. 5, R. 9, W.; on which lands and a horse ferry boat at Fountain Ferry on the Mississippi, the Sheriff certifies that he levied on the 4th of January, 1822; that the lands were appraised as therein stated, and the sale advertised and postponed three several times; that the ferry boat was sold on the 18th of January, 1822, the time fixed for the sale, to Archibald Gamble, for $110, and the whole of the lands on the 2d of March, 1822, were sold to said Gamble for $1,415 46, he being the highest bidder; and,

5th. Thereupon, the Sheriff executed to said Gamble a deed of conveyance for the lands last above described, except a part of fr. Sec. 13, only 98 72-100 acres of which were conveyed; the remainder of said section being claimed by Charles W. Hunter; which last deed is dated on the day and year aforesaid; and is as are the other deeds, copied at length into the record, and was recorded Jan. 14, 1823.

6th. That on the 6th of January, 1825, Rufus Easton executed a deed of conveyance of that date to said Wm. Russell, whereby said Easton, for the consideration of $3,451 paid by Russell to Easton, conveyed to Russell, in fee, all his estate, right, title, interest, property and demand in and to said fr. Secs. 14, 11, 13, the N. half of 12, T. 5, N., R. 10, W., with the houses, buildings and other improvements thereon, containing 1,331 15-100 acres; also, the whole of fr. Sec. 18, the N. fr. half of Sec. 19, and the N. W. qr. Sec. 20, all in T. 5, N., R. 10, W., containing 972 29-100 acres, without any recourse whatsoever on said Easton for any damage or demand, should the title to said lands fail, &c.; which deed was duly recorded Nov. 10, 1829.

7th. That on the 6th of July, 1826, Archibald Gamble and his wife executed to said Russell his deed of assignment, as it is

called, whereby, in consideration of $2,075, at the entire risk and hazard of the said Russell, and without recourse on Gamble for any damages, demand or claim whatsoever, should the title to the land therein described prove defective or wholly fail, said Gamble and wife conveyed to Russell, in fee, all their estate, right, title, interest, claim, property and demand in and to the lands described in the deed last above of Easton to Russell, *excepting,* however, *from the said conveyance and sale, the East half of block number Eighteen,* (18), *in the town of Alton, laid out on said fr. Sec.* 14; all being the same lands which were conveyed by the Sheriff of Madison county to said Gamble, by the deed of March 2d, 1822, above referred to. This deed was acknowledged the 25th of March 1828, and recorded June 6, 1828.

8th.· That on the 10th of April, 1828, Abiel Easton, wife of said Rufus Easton, and said Rufus Easton, executed to William Russell their deed of conveyance, wherein is a recognition of the above-mentioned deed of Easton to William Russell, of the 6th of January, 1825, for the lands therein described—and a sale by said Abiel, for the consideration of $600, of all her right, title, interest, &c., in and to those lands, tenements and appurtenances, "situate," as is said, "in and near the town of Alton, in the county of Madison, and State of Illinois." This, like the former deed from Easton alone to Russell, expresses the sale to be made " at the risk and hazard" of Russell; this was on the 10th of April, 1838, acknowledged by said Abiel, and on the 14th of April, in same year, by Easton, and recorded June 5th, 1828.

9th. That on the 7th of June, 1828, Russell executed to Gershom Flagg a deed of conveyance of that date, whereby, for the consideration of $400, he granted, bargained and sold to Flagg, in fee, the following described lots of ground or parcels of land, described, bounded, &c., situate in the town of Alton, in said Madison county, as the same is laid off upon fr. Sec. 14, T. 5, N., R. 10, W., and which lots thereby conveyed were described as " The whole of block (or an irregular square) numbered one, (1), on the plot of said town of Alton, bounded on the North by Second street of said town, on the East by Alby street, and on the Southwardly and Westwardly side and end by Front street, and by an open space of ground called " the Public Landing," at the South end of Market street, as the said block numbered one is represented on the plat of said town of Alton, of record in the

Recorder's office of said county of Madison." " Also, one other lot of ground in the said town of Alton, of precisely forty feet from West to East, and about 60 feet long, more or less, from North to South; this being the upper and Westwardly end of a large lot in said town, marked, '*Reserved,*' on the aforesaid plot of said town." This deed contains full covenants of warranty of title in Russell, &c. This deed to Flagg was duly recorded on the 9th of June, 1828.

10th. That on the 13th of March, 1834, said Flagg and Jane his wife, reconveyed to said Russell the last described lot of ground, in said town of Alton, for the consideration of $170, without warranty, except liens created against it while Flagg professed to own it, and at the risk in all other respects of said Russell, and "without any recourse whatever to said Flagg or his heirs, if the title should otherwise fail to be good;" which deed was recorded March 17, 1834.

11th. That on the 17th of July, 1832, Wm. Russell executed to Isaac Prickett a deed of conveyance of that date, whereby, for the consideration of $150, he "sold and quit-claimed to Prickett, and to his heirs and assigns, forever, a certain lot in the town of Alton, in Madison county, Ill., as the same had been laid off upon fr. Secs. 11 and 14, T. 5, N., R. 10, a plat of which town is recorded in the Recorder's office of said county; which lot thereby granted, is 240 feet large from East to West, by about 140 feet large from North to South, more or less, and is specially bounded in said deed as follows, to wit: "On the North by Front street of said town, and fronts 240 feet to the same; on the South by the Mississippi river; on the East by Easton street of said town; and on the West by Alby street, as the same has been extended by said Russell to said river, with the appurtenances," &c.

"This deed," (in the words thereof) " being made with the following express and positive limitation, to wit: That said Prickett, being well and fully acquainted with the said Russell's right and title to the above described lot hereby conveyed, takes the right and title of the said Russell to said lot at the entire risk and hazard of him, said Prickett, and without any recourse whatever to said Russell, or his heirs or representatives, for, either consideration money, or costs or other damages, on account of this deed, in case the title to said lot should in any part, or

altogether, fail, or prove bad, in law or equity,—as evidence of all of which, the said Prickett accepts of and receives this deed, with this special clause, and in its present form." This deed was duly recorded July 17, 1832.

12th. That on the 13th of Oct., 1835, said Prickett and his wife executed to James Semple a deed of conveyance of that date, wherein, for the consideration of $600, said Prickett and Nancy his wife, sold and quit-claimed to said Semple a part of the lot described in the deed last above referred to of Wm. Russell to said Prickett, and being 150 feet front on Front street, and running back to the Mississippi river; being a part of the land reserved by said Easton in laying off the said town of Alton, and immediately below and adjoining Alby street, as extended through the said reserve land by Wm. Russell, and bounded on the East by a lot conveyed by said Isaac Prickett to David Prickett, with a clause and limitation in the same words and to the same effect with the one above quoted from the last above mentioned deed from said Russell to Isaac Prickett. This deed was recorded in the office of the Recorder of said county, on the 31st of Oct., 1835.

13th. That on the 20th of Feb., 1847, said James Semple and Mary S. his wife, executed their deed to George C. De Kay, of the city of New York, in the State of New York, whereby, for the sum (as in said deed expressed) of $13,000, said Semple and wife conveyed, in fee, a large number of tracts, parcels, and lots of land, situate in said Alton, among which is conveyed "all the right, title, and interest which said Semple then had or possessed, in and to any and every part of what is known as the 'Reserve,' in the city of Alton, situated between Front street and the Mississippi river, and between the 'Public Square,' at the mouth of the Little Piasa creek, and the 'Common or Promenade,' at the Eastern end of the original plat of Alton," together with all the buildings, houses, and improvements, &c., reversions and remainders to the same. This is a deed without any covenants of warranty, and is recorded March 13th, 1847.

14th. That on the 22d of April, 1847, said George C. De Kay, by Washington T. Miller, describing himself as said De Kay's "Attorney in fact," (but no power of attorney to said Miller, or evidence to act as such attorney, is found in the record,) executed to "The Illinois Transportation Company," his deed of convey-

ance of that date, whereby, for the consideration therein expressed, of $75,000, he " granted, bargained, and sold" unto the said company, their successors and assigns, numerous lots, and tracts of land, among which are those contained in the last mentioned deed of said Semple to De Kay, and his interest, &c., in the last above described lot of 120 feet front on Front street, in the city of Alton. This deed was acknowledged by said Miller, April 22d, 1847, and recorded October 30, 1847.

15th. That the town of Alton was incorporated May 14, 1832.

16th. That the city of Alton was incorporated July 21, 1837, and reference is made to the act of incorporation.

17th. That immediately after the deed from Prickett to Semple, he, Semple, went upon the premises described in plaintiff's declaration, and erected thereon a two story frame house, which was finished in 1837, and so soon as the house was built, Semple rented the lot or piece of ground upon which it stood, and said Semple and his grantees have continued to rent same house and lot and collect the rents, until the present time. That the tenants have had uninterrupted possession of the house as a residence; but the lot has never been enclosed or occupied by such tenants exclusively, and during the whole time of such tenancy, steamboats, flat boats, rafts, &c., have from time to time, landed upon the river side of the same, and the materials, freights and loading, &c., have been landed and carried across said lot by persons generally, and freight and lumber and loading have been continually carried from below up and from above down across the rear end of said lot, without obstruction or interruption, in the same manner as freights and loading, &c., &c., have been landed upon the river side of the land marked on the plat of Alton as " Common or Promenade," and hauled across said commons, as also across vacant lots in Alton, and such use of the public, since 1835, has been with the knowledge that James Semple, and those claiming under him, claimed said property as private, and insisted that it was not public property; and said Semple or his assigns have never given any assent to their rights so to do.

18th. That the town authorities of Alton, during the existence of the incorporation of the town of Alton, and the authorities of the city of Alton, since *its* incorporation as a city, have ever claimed an *easement* in, and the enjoyment of the land

described in the plaintiff's declaration, as a part of the public landing, or public grounds, and have ever refused to tax the same; but have never improved the same.

19th. That, up to the years 1834 and 1835, there were but few inhabitants in said Alton, and it has not hitherto been necessary to improve the said lot for a public landing, to supply the business wants of the city and of the public; but its situation is such as to render it susceptible of improvement for that purpose.

20th. That said Wm. Russell holds among his title papers the aforesaid deed of Wm. B. Whitesides and others, to Rufus Easton, within named.

21st. That one Thomas G. Hawley would testify that said Rufus Easton, during the year 1821, told him, that he wished to sell him lots in block 1, on the plat within named, and spoke of them as lots fronting on the "Public Landing." They were lots fronting on the upper part of the upper lot, marked on the plat of said town of Alton, "Reserve." This evidence is to be rejected, if the Court consider it illegal.

22d. That said Gershom Flagg would testify, that after said Wm. Russell sold him the lots named in the deed of said Russell to said Flagg within named, he said Russell stated, he owned the whole of the property, (meaning lots marked on the plat "Reserved,") and that he, Russell, did not know that there was any question of his title, at the time he sold to Flagg, and for some time after; but having heard there was a question as to his title, he wished to retake the property, and he did, by deed of Flagg to Russell, he, Russell, paying the original consideration, $70, to Flagg. (This evidence is to be rejected, if the Court consider it illegal.)

23d. That from 1818 to 1835, when Semple built, the property was unoccupied, like other vacant property, and there were no inhabitants upon it.

24th. The land described in the plaintiff's declaration is a part of the land marked "Reserved," on the plat above named, and is in the possession of the defendants.

It was further agreed, that the defendants should waive process, and enter their appearance herein, and plead the general issue, and submit this cause to the Court upon the above agreed statements of facts; stipulating with each other, that the original plat and deeds within named, or certified copies of the record of

the same, or the original records, might be introduced by either
party, subject to comparison of the original with the record;
and that, if from the whole of said agreed statement and the law
arising thereon, the Court is of opinion, that the city of Alton
aforesaid is entitled to enjoy and exercise jurisdiction over said
land in plaintiff's declaration mentioned as part of the public
landing place, or for public purposes, then the judgment is to be
for the plaintiff; otherwise for the defendants; that no objection
should be made to the form of action or the form of pleading;
and either an appeal or writ of error should lie from the decision
of the Circuit Court to the Supreme Court; and that the defend-
ants in such appeal or writ of error, should appear without the
service of any summons—and that the decision of the Supreme
Court should be upon the points of law arising upon the within
statement of facts, waiving any objection which might arise to the
*form* of action, as to the legal title in fee not being in the plain-
tiffs, if they or the public are entitled to enjoy the *easement* in
the *locus in quo*, as a public landing place or as public grounds;
and at the Circuit or Supreme Court, the defendants might raise
any questions of law (except as to the fee in the lands as above)
arising from the above agreed statement of facts, the same, as if
especially pleaded.

The case was heard and decided at the August term of the
Madison Circuit Court in the year 1850, Underwood, Judge, pre-
siding, in favor of the defendants; and the plaintiffs have brought
the case into this Court, and the plaintiffs make the following
points:

D. J. BAKER and E. KEATING, for Pltff in error.

The law prescribes no particular form or manner for the dedi-
cation of land to public uses, provided the *intention* of the owner
of the land to dedicate it to such uses be satisfactorily established
by evidence, and no particular description of evidence is required
to prove such intention.  Dedications of land for public purposes
have frequently come under the consideration of the Courts of
this country; in the case of The City of Cincinnati v. The Lessee
of White, 6 Peters, 431, 504, the question is fully discussed;
3 Kent, 450; Town of Pawlet v. Clark, 3 Con. R., 408 and seq.;
City of Cincinnati v. White, 6 Peters, 431; Brown v. Manning, 6

Ohio, 303; Watertown v. Cowen, 4 Paige, 410; Hobbs v. Lowell, 19 Pick., 405; 7 Ohio, 217; 9 Ohio, 80; 3 and 4 Dev., 242; 1 Strange, 95; 3 Kent, 450; 19 Wend., 128; 1 Hill, 189, 191; 17 Pick., 309. In order to dedicate property for public use, it is not essential that the right to use the same shall be vested in a corporate body. It may exist in the public, and have no other limitation than the wants of the community at large. The City of N. Orleans, v. U. States, 10 Peters, 662; 2 Peters, 256. In the case of Barclay et al. v. Howell's Lessee, 6 Pet., 504, the Court held, that the "*declarations* of the surveyor, who was authorized by the owner of the land, to fix upon the plan of the town and survey it, made at the time of surveying and completing the plan of the same, became a part of the *res gesta;* they were explanatory of the act then being done, and as such, were competent evidence to charge his principal." In the case of Hunter v. The Trustees of Sandy Hill, 6 Hill, 411, the Court say: "The law which governs the dedication of property to the public use, is anomalous; under it, rights are parted with and acquired in modes and by means *unusual* and *peculiar*. Ordinarily, some conveyance or written instrument is required to transmit a right to real property; but the law applicable to dedications, is different. A dedication may be made *without writing;* by act *in pais,* as well as by deed." 2 Smith's Leading Cases, 180, and cases cited. The act of throwing open the property to the public use, without any other formality, is sufficient to establish the fact of a dedication to the public. Dedication may be presumed from length of time; and the period required by the Statute of Limitations to bar a right, would, from analogy to that Statute, be sufficient, though so long a time would not always be requisite. Hunter v. Trustees of Sandy Hill, 6 Hill, 413; 3 Kent, 450–1, and note a. In the case of Trustees of Watertown v. Cowen, 4 Paige, 510, it was held, that "a public square is dedicated in the same manner as a street; that the egal title did not pass from the original owner;" the Court considered "the corporation as the proper representative of the equitable rights of the inhabitants of the village, to the use of the public square, so as to authorize the filing of a bill in chancery by the corporation to protect those equitable rights against the erection of a nuisance. The case of Howard v. Rogers, 4 Harris and Johnson, 278, turned upon the construction of a *deed,* which was held not to

4

have been intended to pass anything more than the grantor's interest in the lot. *Had there been a covenant, express or implied, to leave the lot open,* the points would have been the same as in Trustees of Watertown *v.* Cowen, referred to in 2d Smith's Leading Cases, 191; 19 Wendell, 128; Wright's Rep., 750; 1 Sup. U. S. Dig., 534, s. 348; 4 Devereux, 272.

Deed should be so construed as to carry into effect the intention of the parties, 2 Bacon's Ab., 576; effect of recital in deed construed against grantor, 4 Bacon's Ab., 526; parties and privies bound by recitals, 1 Greenleaf's Ev., 823; admissions binding on privies, 1 Greenleaf's Ev., 189, 211; 4 Peters, 1. 3 Johnson's Cases, 174; 8 East, 487; 4 Cruise, 293; 4 Scam. 561; 3 Pick., 262.

Easements and incorporeal interests are not within the Statutes of Limitations. Angel on Adverse Enjoyment, 62, 76, &c.; R. S. 1845, and Limitations. Our Statutes of Limitations, so far as they pertain to real property, were taken in all, except as to the length of time, from the English Statutes, *i. e.*, 32 Henry 8, c. 2; 21 James 1, c. 16; and 3 and 4 William 4, c. 27. The English Courts never considered these Statutes applicable to easements and incorporeal interests; 1 Chitty's Prac., 746, 759; Gale & Whately on Easements, 98.

Where a right to the use and enjoyment of the easement or incorporeal interest has once become vested in the public, by grant or dedication, a non-user of that right for no length of time can bar the public. State *v.* Trask, 6 Vermont 355; New Orleans *v.* United States, 10 Peters, 662; Rowan's Executors *v.* Town of Portland, 8 B. Monroe, 250, "The dedication having been made and proved, did not require a subsequent user to establish or prove it; Cincinnati *v.* White's Lessee, 6 Peters; and Barclay *v.* Howell's Lessee, 6 Peters; Angel on Adverse Enjoy., 36, 37, 38.

Laches are not imputed to counties; 1 Scam., 70. In the case of State Bank *v.* Brown *et al.*, 1 Scam., 106, per curiam, "Are the people then barred by the Statute of Limitations? This question though not directly before the Court, was incidentally decided in the case of Madison county *v.* Bartlett; the Court there say: 'It is a well settled principle, that a state is not barred by a statute of limitation unless expressly named,' and we have no reason to change the opinion thus expressed. See also, 6

Peters, 673; Rex *v.* St. James, 2 Selwyn's *Nisi Prius*, 1334; Vooght *v.* Winch, 2 B. and Ald., 667; Best on Presump., 137, §103; Fuller *v.* Saunders Cro. Jac., 446; cited in 2 Smith's Leading cases, 178; White *v.* Crawford, 10 Mass., 189.

Deeds are to be taken most strongly against the makers thereof, and in favor of the other party or those for whose benefit they were made.

Although to vest a fee under our statute, it is necessary that a plat should have been made, executed, acknowledged and recorded in accordance with the statute; a plat duly recorded, though informally executed, will vest a *use in* the public.

In the construction of a deed, effect should be given to every word and sentence, when such a construction would not contradict the manifest intention of the grantor, or make the instrument ridiculous or absurd, and no part will be rejected as surplusage which can consistently with the general object of the same, be retained.

Under the Recording Law of 1820, it was only necessary to record within twelve months, and an unrecorded deed was then good as against a judgment, and a purchaser under an execution then purchased only what actually belonged to the defendant.

The Court below erred in deciding that the defendant had such a title as protected him under the Statute of Limitations of 1835.

J. SEMPLE, W. B. SCATES and WM. MARTIN, for Defts in error.

The defendants contend, that as the title was and is clearly vested in Easton and his assignees, such title cannot, and will not be divested by any strained construction of the acts of the owners of the land; but that before a dedication to the public can be made out, there must be shown a *clear and undoubted act* of such owners placing the *dedication beyond dispute.* If the case is doubtful or ambiguous, the vested rights of the patentee and his assigns will not be disturbed.

The only foundation of the claim of the city, rests on the covenants in two deeds made by and between Easton on one part, and Whitesides and Reynolds on the other.

1st. By a fair and legal construction of these covenants and conditions, connected with the plat, they do not make the

" *Reserve*" public ground, or amount to a dedication to the public.

2d. They are merely personal covenants and conditions; do not run with the land, or bind the assignees of the patentee.

3d. They are void, being repugnant to the estate granted.

4th. They are void as to sales under execution.

5th. They are void as to creditors, as being voluntary and without consideration.

6th. They are void as to creditors, because the deed was not recorded until after the judgment against Easton.

7th. The seven years' statute of limitations bars the plaintiffs'. claim after fifteen years' adverse possession.

1st. As to the covenants, &c. The covenant in the deed from Easton to Whitesides and Reynolds is as follows: "And the said Rufus Easton does covenant and agree that all the lots for public, scholastic, and religious purposes, for a public landing, or any reservations, of common, east of the Fountain creek, *as designated on the plat aforesaid of said town,* and particularly the land that lies between Front street and the river Mississippi, *as designated on said plat,* fronting on the river, between the said Fountain creek and Henry street, shall *be* and forever *remain* a public landing place, and shall *be* and *remain* for the use of the public, *as designated on said plat.*"

Here it is clear that the plat is made a part of the covenant, by no less than three references to it in one short sentence. Every word and mark on the plat, affecting this question, forms as much a part of the contract between the parties, as if they had all been inserted in the covenant itself. If instead of referring to the plat for an explanation of what was intended should *be and remain* public, the parties had gone on and inserted it all in the covenant, leaving out any reference to the plat, but inserting in lieu thereof exactly what the plat says, then the public square, the seminary square, the gospel square, the public landing, and the common, or promenade, would all have been described by metes and bounds, and all the private lots, strips of ground, and this land marked 'reserved!' would have been particularly described as they are marked on the plat. In such case there would have been no doubt as to what was intended by the parties. On this point, a striking case is to be found in 3d Cond., Rep. 362.

Another case in 6 Peters, 510. The Court say: ".The deed from Ormsby called for a lot, designated on the town plat 183,

City of Alton *v.* Illinois Transportation Company.

bounded by Front street, the river Monongahela, and lots numbered 182 and 184."

On this same point, in 18 Ohio, Rep. 94, the Court say, "When the width of a street marked by right lines, is given in a town plat, surplus land, between the street and the low water mark of a river, is not thereby dedicated to the use of the town."

Also, in 1 Blackford, 44, the Court say: "The limit of the street as designated on the plat, is the extent of the public ground, and if there is any land between that street and the river it is not granted to the town of New Albany. See also 6 Mass., 435.

It is a rule of law, that all the words of a deed or instrument must have their full operation if possible. Now the word "*reserved*" is, by reference, a part of this covenant, and must operate if possible.

The covenant of Easton is the only one that could make a dedication. Whitesides and Reynolds could not dedicate the land by their deed for they had no title.

This clause is not a covenant, but a condition of non-alienation, void of itself but particularly void as to creditors.

2d. These are merely personal covenants and conditions: do not run with the land, nor bind the assignees of the patentee. 9th Humphries, 540; 2 Blackford, 301; 4 Cruise, 452; 10 East, 120; Coke's Reps., 135.

3d. They are void as being repugnant to the estate granted. Sprague *v.* Snow; 4 Pickering, 54; 4 Gilman, 544; 4 Kent, 131; 2 Cruise, p. 5, Secs. 19, 20, 21, 22.

4th. They are void as to sales under execution. 4th Kent, 124, 129; 2 Cruise, p. 6, Secs. 25, 28; do., p. 11, Secs. 46, 47, 48; 7 J. R., 534; 15th J. R., 280.

5th. They are void as to creditors, as being voluntary, and without consideration. 4 Kent, 461; 4 Cruise, 457.

6th. They are void as to creditors, because the deed was not recorded until after the judgment lien attached.

The law of 1802, Purple's L. L., p. 298, acts 1821, p. 174 made judgment a lien on all defendants' lands. This law was in force up to 1821. The act of 1819, p. 20, Sec. 8, giving a year to record deeds, only applies to subsequent purchasers and mortgagees, and not to creditors. The protection to creditors rested in 1821

on the principles of the common law, which would give the judgment lien in this case priority to the subsequently recorded deed without notice. 4 Cruise, 482 ; 4 Kent, 450.

7th. The seven years' statute of limitation bars the plaintiff's claim after fifteen years' adverse possession. Scott *v.* Ratcliffe, 5 Peters, 87 ; 11 Peters, 54; R. L., p. 349, Secs. 8, 9, 10, 11, p. 104, Sec. 8 ; 3 Cruise, 489, Secs. 41, 44 ; 3 Kent, 359.

CATON, J. In 1818 Easton claiming to be the owner of the land, laid out the town of Alton, upon the recorded plat of which, the two blocks, lying between Front street and the Mississippi river are marked "Reserved," and the premises in controversy are a portion of one of these blocks. Subsequently, Whitesides and Reynolds set up a claim to the land upon which the town was laid out. These parties settled their controversy, by executing and interchanging the deeds, upon the construction of which, the decision of this case depends. These deeds, recite that the parties had conflicting claims or titles to the land, and that for the purpose of compromise, they had agreed to relinquish to each other, the part allowed to him or them in the compromise, in pursuance of which the deeds were simultaneously interchanged. They are therefore to be construed together as parts of the same transaction. As to the dedications, the public is to be considered the grantee, and the other parties to the deeds the grantors. Whoever subsequently purchased lots or made improvements in the town, paid to the proprietors a proportionate consideration for the dedications of land made to the public use. Easton by his deed, conveyed to Whitesides and Reynolds, certain specified lots and blocks in the town, and then, expressly "covenants and agrees, that all the lots, for public, scholastic and religious purposes, for a public landing or any reservations of common, east of the Fountain Creek, as designated on the plat aforesaid of said town; and particularly the land that lies between Front street and the river Mississippi as designated in said plat, fronting on the river between the said Fountain Creek and Henry street, shall be and forever remain a public landing place, and shall be and remain for the use of the public as designated on said plat, excepting and reserving to said Rufus Easton and his heirs forever the exclusive right of a ferry or ferries on and from said land so made common." Here

are erased in the deed the words "or for any other purpose" between the words "common" and "east," and the words "that lies between Front street and the river Mississippi, as designated in said plat," are interlined.

Upon the plat several interior lots and blocks are marked as dedicated to the public, one for a Court House, some for religious and some for educational purposes, and upon the river and immediately east of Fountain creek, a fraction is marked for a public landing, and further east and between the blocks marked reserved, and Henry street, is a space marked "promenade or common." We are to determine what part of the town plat is by this covenant, declared dedicated to the public. In the forepart of the clause quoted, are described in clear and unequivocal terms, all of the lands and lots which are marked upon the plat, as dedicated for specified purposes, and these are all, which judging from the face of the plat, I should be inclined to hold, Easton had dedicated to the public. It is insisted, that by the subsequent part of the sentence, the parties did not intend to make any new dedication, but only to confirm what had already been designated for the public use, upon the plat. I cannot so understand the covenant. That subsequent clause, is as follows : " and particularly the land that lies between Front street and the river Mississippi, and designated in said plat, fronting on the river, between the said Fountain Creek and Henry street, shall be and forever remain a public landing place," &c. If the parties meant what they expressed, then certainly all the land described in this clause was dedicated to the public, and the only question which can arise, is, are the two blocks marked "Reserved" embraced in this description. They are as unequivocally described, as if they had been designated by name, and yet if that had been the case, I amagine this controversy would never have arisen, notwithstanding the reference which is made to the plat, and which it is urged, signifies a different intention. Here the metes and bounds of certain premises which are designated for the public use, are given, and in the center of the tract included within those bounds are the two blocks, which it is now insisted were not dedicated to the public. But the covenant says, that the land that lies within those bounds, "shall be and forever remain a public landing place." If these blocks were not intended to be included in this dedication, why was this

clause inserted at all? Every other tract had been clearly and pointedly described in terms which admit of no doubt, and unless these two blocks were intended to be added to the list already dedicated, then this clause is worse than useless. A construction which requires us to reject an entire clause of a deed is not to be admitted, except from unavoidable necessity. We are not at liberty to reject this part of the deed, which clearly expresses a meaning more extended, than is manifest in other parts of the instrument. We are bound to presume it was inserted for a purpose, and has its office to perform. The rule is thus laid down in Cruise's Dig. Title 32, Deed, chap. 19, Sec. 5. "The construction ought to be made on the entire deed and not merely on any particular part of it. *Ex antecedentibus et consequentibus fit optima interpretatio.* Therefore every part of a deed ought if possible to take effect, and every word to operate."

Then we are not at liberty to suppose that the parties did not mean what they have so emphatically said, in this entire and distinct clause, and that they only meant what they had previously expressed. But there is a circumstance on the face of this deed, which clearly shows that the description which embraces these two blocks was not inadvertently or carelessly inserted. I allude to the interlineation after the word "land" of the following: "*that lies between Front street and the river Mississippi as designated in said plat.*" The description, before these words were inserted, was of the land lying on the river between the creek and Henry street, which necessarily included the two blocks, but as if to silence every doubt, they inserted the interlineation, which points directly to these two blocks; for by a glance at the plat, it will be seen that they occupy the whole space between Front street and the river so far as that street is extended and delineated on the maps. Really it would seem as if the parties had exhausted their ingenuity and command of language, in order to expel every doubt of their intention to dedicate these blocks to the public.

The only argument urged against this explicit declaration of the parties, is drawn from the expression "as designated on said plat," which it is insisted limits the description, to such lands as were by the plat dedicated to the public. These are usually, if not universally, words of description and not of quality. They serve to connect the deed with the plat, so that by applying the

one to the other, the former may be rendered intelligible. They give effect to the expressions of the deed but they do not limit them. If there be that upon the face of the plat, to which the expressions of the deed can apply, then of course we must make the application, rather than reject the words of the deed, as not expressing the intentions of the parties. This reference to the maps, occurs three times in the description part of the covenant. Such reference was indispensable, in the description of the premises, but was quite unnecessary for the purpose of specifying the objects or purposes of the dedication. It seems to me that it can admit of no doubt, that in the two first instances the reference is made merely for the purpose of description. In the last, it may have been designed to limit the words "shall be and forever remain a public landing place," so as to prevent them from being applied in such a sense as to make the Court House square and other interior lots, a public landing, for which they were altogether inappropriate.

But conceding that these references show that no new dedication was intended, then it is clear that the parties construed the plat as having already reserved them for the public use. If the plat is made to control the extent of the dedication, we must construe the plat as the parties understood it, and that is explained by the unequivocal expressions of the covenant. The two blocks are certainly embraced in the description of the land dedicated, and the construction contended for so far from proving that they did not intend to include them in the dedication, shows that they considered that they had already been dedicated by the plat. This construction, makes the parties say, that "these blocks shall remain reserved for a public landing, as the same are designated and set apart on said plat."

I will now advert to the other deed, from which it will appear, if possible with still more clearness, that it was the intention of the parties to include these blocks in the dedication. As before remarked, these deeds are a part of one transaction and must be construed together. The corresponding clause in the second deed, is in the form of a reservation, and is as follows: "These presents shall not be construed to convey to, or vest in said Easton any exclusive interest in any of the streets, lots for public or scholastic or religious purposes; for a public landing, or any reservation of commons to the east of Fountain Creek, in said

town of Alton, as designated on the plat of said town.   But that all the ground from the public landing inclusive, as designated on said plat, to Henry street, and that lies between Front street and the river Mississippi shall forever be and remain a public landing for all persons whatsoever, except for a ferry landing." In this deed we find the same property described in the same order, and in almost the identical language, except that that which points to these two blocks, is if possible, still more explicit than in the other.   This deed says, "that *all* the ground from the public landing inclusive, as designated on said plat, to Henry street, and that lies between Front street and the river Mississippi shall forever," &c.   These two blocks occupy nearly the centre of the tract thus described, and if *all* of that tract is dedicated to the public, it is placed beyond cavil, that these two blocks are included in that comprehensive word.   This seems so clear, that neither argument or illustration can make it more so.   To my mind this is so manifest, both upon first impression, and after the most careful study of both deeds, that there is no room for construction.   But as some understand them differently, I shall now admit that there is some ambiguity in the terms employed to express the meaning of the parties, and then we must resort to the well known rules of law for the purpose of construction.

When a deed is so drawn, that some will read it one way and some another, it is a well established rule, that that meaning shall be adopted, which is adverse to the interests of the grantor. In Cruise's Digest, Tit. 32, Deed, Chap. 19, Sec. 13, the rule is thus stated: "A deed is always construed most strongly against the grantor, *verba chartarum fortuis accipiunter contra proferentem; et quælibet concessio fortissime contra donatorem interpretanda est.* For the principle of self-interest will make men sufficiently careful not to prejudice themselves by using words of too extensive a meaning.   And all manner of deceit is hereby avoided in deeds; for people would always affect ambiguous expressions, if they were afterwards at liberty to put their own construction on them."   If there be ambiguity in this deed, in no case could this rule apply with more reason or justice.   Here the parties have made their deeds and spread them upon the records of the county for the inspection of the public, whereby they have made certain dedications, the object and effect of which was, to invite purcha-

sers and improvements, and to enhance the value of the residue of the town property. In that way they expected to be remunerated for the dedications thus made, and every man who purchased a lot of them, or made improvements there, paid a proportion of the consideration, for the property donated to the public. To say the least of it, these deeds were so drawn as to induce a large proportion of purchasers to believe that the premises in controversy were dedicated, and thus they have received a consideration from the public for this very land, and to allow them now to say, that they did not intend to include it, is to allow them to practice a palpable fraud upon the public, and to take advantage of their own wrong. This the plainest dictates of common honesty forbids. The law will not allow them to affect ambiguous expressions, and then permit them to put their own construction upon them. Here the words are emphatically their own, for the grantees—the public—were not there to dictate or suggest, and certainly the principle of self-interest was sufficient to make them "careful not to prejudice themselves by using words of too extensive a meaning." It is incredible to me, that intelligent parties could have used such emphatic and pointed words to include these blocks, if it was not the intention of the parties to embrace them in the dedication. It may be observed that several of the lots, set apart to Whitesides and Reynolds, are immediately in the rear of one of these blocks, and their value very much depended upon having the space in front of them open to the river, rather than have it obstructed by the individual property of Easton. And this may explain why even stronger expressions are used in the reservation contained in the deed to him, than are found in the covenant to Easton. Possibly other words might have been used, so as to have left less room for controversy in the minds of some, that the parties did intend to include these blocks in the dedication; yet this is no reason for saying, we will not believe that they intended what they have said. This would be reversing the rule of the law and throwing every doubt or uncertainty in favor of the grantor. I cannot entertain a doubt, that by every rule of law and of reason, we ought to hold that the premises in question were dedicated to the public use.

Nor do we think the rights of the public are barred by our statute of limitations, which prescribes that certain real actions

shall be brought within seven years after possession taken by the defendants. Without stopping to inquire whether the rule that laches are not imputable to the public, or that time does not run against the government, applies to inferior municipal corporations, such as towns, cities and counties, as well as to the state, we entertain no doubt that this statute has no application to the case before us. Whatever title to these public grounds may be vested in the city, she has not the unqualified control and disposition of them. They were dedicated to the public for particular purposes, and only for such purposes can they be *rightfully* used. For those purposes the city may improve and control them, and adopt all needful rules and regulations for their management and use, but she *cannot alien or otherwise dispose of them* for her own exclusive benefit, nor are they subject to the payment of her debts. At most she but holds them in trust for the benefit of the public. The right to the use of the property is not limited *exclusively* to the citizens of Alton, but the citizens of the state generally have an *equal* right with them in the appropriate enjoyment of the dedication. This is not like the case of property purchased by the city for her own exclusive use, which she could dispose of at her pleasure. Whether an adverse possession would run against property thus held, we do not now propose to inquire, but we entertain no doubt that this statute does not apply to this case, and that the rights of the public in this dedication have not been forfeited by non-user, or barred by adverse possession.

Russell's judgment against Easton, under which the defendant claims to hold title, was subsequent to the deeds, and as the deeds were recorded within the time prescribed by the statute then in force, the title conveyed by them could not be prejudiced by that judgment.

The judgment is reversed and the cause remanded.

*Judgment reversed.*