(No. 12573.—Decree affirmed.)

THE RUDOLPH WURLITZER COMPANY, Appellant, *vs.* THE STATE BANK OF CHICAGO, Trustee, Appellee.

*Opinion filed October 27, 1919—Rehearing denied Dec. 4, 1919.*

1. EASEMENTS—*when plat must be construed with later agreement restricting use of private alley.* Where parties who have together platted a subdivision subsequently enter into an agreement restricting the use of a strip of land marked on the plat as a private alley, the provision in the plat for the private alley must be construed in accordance with the intention of the parties as expressed in the subsequent agreement.

2. SAME—*what is included in a right of passageway.* Where a right of passageway is granted over a strip of land having definite boundaries, such right extends to the full width of the tract described but does not include the right to light and air.

3. SAME—*what structure does not obstruct passageway.* A stage erected eighteen feet above a strip of land between two buildings does not obstruct the reasonable use of said strip as a passageway.

4. SAME—*when putting windows into party wall is not evidence of adverse possession.* Where an agreement for a party wall is entered into before the wall is built, the fact that windows are put in the wall by the party of whose building the wall is a part is not evidence of hostile possession or of an act of ownership over the wall inconsistent with its use by the other party.

5. SAME—*what use may be made of party wall consistent with right of passageway.* Where parties have agreed for a right of passageway which runs along a party wall, the person over whose land the passageway runs may attach his building to any portion of the party wall located on his land if such can be done so as not to obstruct the free use of the passageway.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

JOHN C. BURCHARD, and HERBERT HAASE, (JAMES M. SHEEAN, of counsel,) for appellant.

BAYLEY & WEBSTER, for appellee.

WILSON, MOORE & MCILVAINE, for the trustees of the estate of Marshall Field.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from the superior court of Cook county, in which a decree was entered denying the relief prayed for in the complainant's bill and decreeing that appellee, the State Bank of Chicago, trustee of the estate of Arthur Orr, deceased, and others, have a right to construct a structure over a certain narrow tract of land claimed by the appellant to be a private alley for the benefit of certain owners of lots adjacent thereto and in which appellee contends there exists but a right of passageway.

It is conceded both by appellant and appellee that each derived title to the respective premises by *mesne* conveyances from William A. Giles as the common source of title, who with Albert J. Averell caused to be platted and acknowledged what is known as Giles & Averell's subdivision of lots 7 and 10 in Fractional Section 15 addition to Chicago, which plat was entered of record on March 9, 1881.

At the north end of lots 4 and 5 of said addition and at the east end of a portion of lot 2 a small tract is shown

on said plat 15 feet in width on the north end of lots 4 and 5 and the remainder 10 feet in width. On the plat across these tracts appears the following language: "To be used as a private alley by William A. Giles and Albert J. Averell, their respective assigns and legal representatives." This tract as shown on the plat connects an 18-foot alley lying east of the property of the parties hereto with a 10-foot public alley lying west of and adjacent to the premises of the appellee. Lot 1 in this subdivision is owned by appellant, the Rudolph Wurlitzer Company; lots 2 and 3 are owned by the trustees of the Marshall Field estate, and lots 4 and 5 are owned by the appellee, the State Bank of Chicago, trustee of the Arthur Orr estate.

The land constituting Giles & Averell's subdivision of lots 7 and 10, in block 8, of Fractional Section 15 addition to Chicago, was at the time of the platting owned in severalty by William A. Giles and Albert J. Averell. On March 9, 1881, (that being the date when the plat of the subdivision was recorded,) Giles and Averell executed, acknowledged and recorded a contract under seal, in and by which each covenanted with the other, for a valuable consideration, that the portion of the land so platted in said subdivision and marked on the plat, "To be used as a private alley by William A. Giles and Albert J. Averell, their respective assigns and legal representatives," should forever remain for the free passage and right of way of all and every owner and occupant of all the lots of said subdivision, and providing that said agreement could at any time thereafter, by the mutual consent in writing of all the owners of the lots in the subdivision, be wholly annulled and held for naught and all rights and easements thereby granted be wholly terminated. It was also further agreed that said agreement should be binding on the heirs, executors and assigns of the parties thereto, respectively.

On March 9, 1881, William A. Giles and wife conveyed by metes and bounds to the trustees of the Chicago Society

of the New Jerusalem a portion of the land in said plat, using, however, the descriptive points of the original lots 7 and 10, in block 8, in Fractional Section 15 addition, instead of the new plat, as follows: Commencing on the south line of lot 10, 110 feet from the southwest corner of lot 10; running thence north 106 feet; thence east 61.75 feet to the west line of an 18-foot alley; thence south along the west line of said alley 106 feet to the southeast corner of lot 10; thence west along the south line of lot 10 61.75 feet to the place of beginning; subject, however, to the conditions and provisions of an agreement between said William A. Giles and Albert J. Averell respecting said premises bearing date the 9th day of March, 1881, and on said date duly recorded. This deed contained no reference to the plat of Giles and Averell.

The trustees of the Chicago Society of the New Jerusalem in June, 1894, leased for 99 years the premises above described to the New Temple Music Building Company, in which lease the following language was used: "It is understood that a portion of said premises on the north side thereof has been set aside for a private alley, as shown upon the plat recorded in the recorder's office of Cook county in book 16 of plats, page 2, pursuant to an agreement between William A. Giles and Albert J. Averell dated March 8, 1881, and recorded March 9, 1881. As to that portion of said premises lying north of the south line of said private alley, said parties of the first part demise and lease to the party of the second part only their right, title and interest to said strip, whatsoever the same may be." Upon the execution of the aforesaid lease the church building was wrecked and upon its site was built an eleven-story theater and office building, known as Steinway Hall, the north line of which coincides with the south boundary of the tract of land in question, marked on the Giles and Averell plat. The first two or three stories were occupied by the auditorium and above were offices. The upper stories of the north wall

above the auditorium were practically all glass, and soon after the erection of this hall a bay window was built projecting four or five feet over the tract of land in question.

On April 30, 1886, William A. Giles and wife conveyed to Frederick Fischer that part of lot 7, in block 8, in Fractional Section 15 addition to Chicago, bounded and described as follows: Beginning at the northwest corner of said lot; thence south along the west line of said lot (being the east line of Wabash avenue) 51 feet to the center of a brick wall and the extension of said line 110 feet; thence north five inches; thence east 62 feet, more or less, to the east line of lot 7; thence north along the east line (being the west line of an 18-foot alley) 51 feet, more or less, to the north line of lot 7; thence west along the north line to the place of beginning,—said premises being otherwise described as sub-lot 1, the north one foot of sub-lot 2 and the north five inches of sub-lots 5 and 6 in assessor's division of lots 7 and 10, in block 8, together with all rights of the party of the first part in and to a private alley adjoining a part of said premises, as shown on a plat recorded March 9, 1881, in book 16 of plats, page 2.

On December 26, 1911, there was filed for record a certain agreement under date of September 13, 1894, by and between the New Temple Music Company and Frederick Fischer, owner of the land last above described, in and by which agreement Fischer permitted the music company to support in the south face of the east 62 feet of his wall aforesaid, the north ends of beams to support the paved surface of said alley, so that the beams serve as a roof or ceiling to the excavated space the company desired to use. In 1901 the premises leased by the New Temple Music Company were conveyed to Arthur Orr, who died in 1906, testate, naming in his will the State Bank of Chicago as trustee, which took possession of the premises.

The appellant, the Rudolph Wurlitzer Company, purchased the Fischer premises in 1912. In the conveyance

the following language was used: "It being the intention
to include any and all lands and tenements, hereditaments
and easements of which Frederick Fischer, the father of
the grantor, was seized and possessed or in which he had
any right, title or interest during his life, or which has come
to the grantor as a descendant or heir of his father, Fred-
erick Fischer. Said grantor, for the consideration afore-
said, also grants, sells and conveys to said grantee, its suc-
cessors and assigns, all the rights of said grantor in and
to a private alley adjoining a part of the said premises, as
shown on a plat recorded March 9, 1881, in book 16 of
plats, page 2."

In 1907 Bertram C. Whitney leased the auditorium in
Steinway Hall and a space over a private alley at the level
of the stage floor, after which he built a structure composed
of steel beams, tile and plaster, which extends from the
north wall of Steinway Hall to the south wall of the Wur-
litzer building. Its lower surface is 18 feet and 9⅝ inches
above the surface of the alley in question. Its height is
33 feet and 10-3/5 inches, so that its roof is 52 feet and
8⅜ inches above the surface of the alley. It blocks or ob-
scures completely three windows and about three-quarters
of a fourth window in the second story of the Wurlitzer
building, all of two windows in the third story of the
south wall, and blocks or obscures about the lower one-third
of three windows in the south wall on the fourth floor. Its
south end is supported by four steel beams bolted to the
Steinway Hall structure. These four steel beams extend
practically to the south wall of the Wurlitzer building,
where they rest on perpendicular steel beams, which in turn
rest on a horizontal steel beam placed on the surface of
the private alley. Inasmuch as the alley surface is sup-
ported by beams whose north ends rest on the Wurlitzer
foundation, that foundation is now carrying part of the
weight of this structure. These perpendicular beams and
the horizontal beam are encased in cement. The pillars are

18 inches in diameter and the base extends from the south face of the south wall of the Wurlitzer building, and therefore narrows the alley one foot and 11 inches at its east end and two feet and 1⅝ inches at its west end. It is slightly longer than the superstructure, which appears to be about 53 feet in length. This structure is of value to the owners of Steinway Hall because it adds to the rentable area and the rental value of the auditorium. It was erected by Whitney with the consent and approval of the State Bank of Chicago, as trustee. The premises owned by the Wurlitzer Company are susceptible of improvement with a high steel-structure office building, and such a building would be a suitable improvement for the premises. The right of the Wurlitzer Company, if it has such right, to have this alley free and clear of any incumbering structure from the surface of the ground to the sky is likewise a valuable one.

The bill of complaint, as finally amended, prays for the removal of the structure from the private alley and for a permanent injunction restraining the erection of any structure over or upon it. Appellee, as trustee, by its answer denies that the space covered by the structure in question is a private alley but alleges that it is a passageway, only, and that the owners of the Steinway Hall property have the right to use the property so long as they leave an adequate passageway; that by the agreement between Giles and Averell dated March 9, 1881, and recorded March 17, 1881, the use of the space designated on the plat as a private alley was limited to passage and right of way, only. Appellee also filed a cross-bill, alleging that by the conveyance to the trustees of the Chicago Society of the New Jerusalem, and through *mesne* conveyance from them, it became the owner of so much of the south wall of the Wurlitzer building as lies south of a line 106 feet north of and parallel with the south line of original lot 10 and east of the west 110 feet thereof; that the use of the space designated on

the plat as a private alley was limited by the agreement of March 9, 1881, to passage and right of way, only; praying for the right to use the south wall of the Wurlitzer building to support the north end of its structure over the alley and alleging that the complainant had refused it that right, and also praying for an injunction restraining interference with the maintenance of its structure over the alley. The cross-bill made the complainant and the trustees of the estate of Marshall Field, as successors in title to the Averell property, defendants.

Complainant answered the cross-bill denying the right of cross-complainant to any relief, and expressly setting up by way of affirmative defense that the deed of Giles to the trustees of the Chicago Society of the New Jerusalem conveyed only to the south wall of the Wurlitzer building and that cross-complainant has no interest therein; that the wall has been in its present situation since 1872, and that Giles and his grantees have been in actual, open, notorious, continuous and hostile possession thereof, claiming title thereto and to the ground on which the wall rests, ever since its erection; that cross-complainant's right, if it has any, accrued to it March 9, 1881, and that no assertion of such right in the wall had been made until the filing of the cross-bill, December 13, 1915.

Anna B. Averell, who became the owner, on the death of her husband, of lots 2 and 3 of Giles & Averell's subdivision, also filed a bill in the superior court of Cook county to establish her right to have this alley remain free and clear of all obstruction. Her property was afterward sold to the Marshall Field estate, and that cause was consolidated with the instant case, and the trustees of said estate became parties complainant in the superior court.

The principal question in this case is one of construction of said original agreement and plat. The appellee, the State Bank of Chicago, trustee, as successor in title to Giles, claims that the agreement was for a passageway, only.

Whether this be so depends primarily upon the construction of Giles' agreement with Averell, considered in connection with the plat filed. (*City of Alton* v. *Illinois Transportation Co.* 12 Ill. 38; *Field* v. *Leiter,* 118 id. 17.) In the deed of Giles and his wife to the trustees of the Chicago Society of the New Jerusalem, dated March 9, 1881, the property now owned by appellee was described by metes and bounds as "all that portion of original lots 7 and 10, in block 8," etc., no reference being made to the subsequent plat. Reference is, however, made in said deed to the agreement between Giles and Averell, as follows: "Subject, however, to the conditions and provisions of an agreement between said William A. Giles and Albert J. Averell dated March 9, 1881, and filed for record," etc. On April 30, 1886, Giles sold the land now owned by appellant to appellant's grantor, Fischer. This deed describes the property by metes and bounds as "that part of lot No. 7, in block 8," etc. This conveyance does not refer to the subsequent plat except by reference to the alley right. That provision is as follows: "Together with all rights of the party of the first part in and to a private alley adjoining a part of said premises, as shown on a plat recorded March 9, 1881," etc. That portion of the strip in question extending north from the 10-foot public alley adjoins lot 2 on the east, as shown by the plat of Giles & Averell's subdivision, and was by said agreement made a part of the strip in question. Lot 2 was then owned by Averell. The balance of the strip in question was a part of the land of Giles. The deed of Mrs. Averell conveying lot 2 to the Marshall Field estate is not in evidence, but it appears from the argument of the trustees for that estate that her conveyance was made subject to said agreement and plat. The plat made and filed by Giles and Averell on the date of said agreement refers to said strip as follows: "To be used as a private alley by William A. Giles and Albert J. Averell, their respective assigns and representatives." This language is to be con-

strued, if possible, in accordance with the intention of the parties making it, and its construction is to be governed by such intention.  *Field* v. *Leiter, supra.*

It will be observed from the transfers herein set out that it was recognized by the parties thereto that the rights conveyed by such deeds were based on and defined by said agreement and plat.  This agreement, dated March 9, 1881, after describing the property of the parties to be affected thereby, provides as follows:  "Now, therefore, said Giles, in consideration of the premises and of the sum of one dollar to him in hand paid by said Averell, the receipt whereof is hereby acknowledged, has and hereby does covenant, promise and agree to and with the said Averell, that, subject to the condition hereinafter specified, said portion of said premises so as aforesaid owned by said Giles and marked on said plat as 'To be used as a private alley by William A. Giles and Albert J. Averell, their respective assigns and legal representatives,' shall forever remain for the free passage and right of way of all and every owner and occupants of all of said lots 1, 2, 3, 4 and 5 in said subdivision by said Giles and Averell of said lots 7 and 10. [Here follows identical agreement by Averell.]  And the parties hereby mutually make and declare these presents an agreement running with the lands which they respectively own, as aforesaid."

It will be seen that this agreement, after quoting the language used in the plat as having been so used, construed said language by providing that that portion of the premises referred to by that language, "shall forever remain for the free passage and right of way of all and every owner and occupants of all of said lots," etc.  The effect of so quoting the language used in the plat, and in that connection defining the rights of the parties, was to place a limitation upon the language of the plat.  We are of the opinion that the agreement and plat should be construed as granting a passageway, only, and that it was not the in-

290 — 6

tention of the parties to convey a private alley carrying with
it the right to have it clear from all obstructions from the
surface of the ground to the sky. This construction is borne
out not only by the language, "free passage and right of
way," but is also shown by the further stipulation in said
agreement as follows: "It is, however, expressly provided
and agreed hereby that the premises in this agreement relat-
ing to the use of that portion marked on said plat or map
'To be used as a private alley by William A. Giles and Al-
bert J. Averell, their respective assigns and legal representa-
tives,' may be at any time hereafter, by the mutual consent
in writing of all the owners of all said lots 1, 2, 3, 4 and 5
in said subdivision of lots 7 and 10 by said Giles and Aver-
ell, be wholly annulled and held for naught and all the rights
and easements hereby granted be wholly terminated." Had
this alley been intended as an estate in lands the parties to
this agreement would scarcely have provided for annulling
that agreement by consent in writing. Estates in lands are
not conveyed in this manner.

The right to the land in question being a right of pas-
sageway and the boundaries of said land being defined, it
follows that the right of passageway existed as to all the
land within those boundaries, and appellee had no right to
obstruct any portion of it by placing thereon upright sup-
ports or pillars. Where a right of passageway is granted
over a strip of land having definite boundaries, such right
extends to the full width of the tract described. (*George
v. Cox,* 114 Mass. 382.) The chancellor did not err in
finding that the pillars placed in said alley by appellee were
obstructions and ordering their removal.

Cases are cited by appellant announcing the rule con-
cerning the right to light and air. Those cases apply to
private alleys. Since in the view of this court the agree-
ment here was but for a passageway those cases are not
applicable, as the right of passageway does not carry with
it the right to light and air. The stage erected is over

18 feet from the surface and cannot be said to obstruct the reasonable use of said strip as a passageway.

It is contended by appellee that it has the right to rest cross-beams supporting the stage erected over the alley upon the south wall of appellant's building on the ground that the south wall is a party wall and that the land beneath it was conveyed by Giles through *mesne* conveyances to appellee. Appellant, on the other hand, contends that the property conveyed by the deed of Giles to appellee's grantor extended only to the south face of the wall herein referred to as a party wall, and that the Statute of Limitations has run against the rights of appellee, if it ever had any right to use said wall, as Giles transferred the premises south of said wall to appellant's predecessor in title over thirty-four years ago, and that he thereafter exercised such ownership and control over the whole of the south wall as to amount to hostile and adverse possession thereof. The rule in this State concerning the effect of possession retained by the grantor is laid down in *Peoria and Pekin Union Railway Co. v. Tamplin*, 156 Ill. 285: "A vendor, after conveyance and delivery of possession, will be regarded as a trustee for the vendee as regards the possession, just as he was a trustee of the title before conveyance; and hence if the vendor wishes to change the character of the possession he must manifest his intention by acts of hostility to the title of his vendee, denying the right of the latter and holding adversely to it.—*Olwine* v. *Holman*, 23 Pa. St. 284."

It is contended by appellant that Giles' intention to hold hostile possession of said premises is shown by the fact that windows were put into this wall. It is evident from the record that this wall was built and these windows put into it shortly after the making of a party-wall agreement with the then owner of appellee's property. This agreement specifically gave the right to the owner of the premises south of said wall to use the same. It could, therefore, scarcely be said that the placing of windows therein was

evidence of hostile possession or that the possession of Giles was hostile and adverse in its inception. The record does not disclose any evidence of the exercise of acts of ownership over said wall inconsistent with the use of the south face thereof by appellee.

Appellant urges that because appellee's predecessor in title in 1894 entered into an agreement with appellant for the use of that portion of the south wall beneath the surface, such agreement was a recognition of the claim of ownership of appellant and established that appellant claimed ownership of the entire wall as early as 1894. Without passing upon the effect of said agreement as notice to appellee's predecessor in title, it appears that the agreement was not recorded until 1911, and could not be construed as notice to appellee until recorded. Rev. Stat. chap. 30, sec. 30.

We have read the record and find no evidence of hostile and adverse possession of appellant or its predecessors in title prior to its refusal to allow appellee's contractor to use said wall. This occurred but a comparatively short time prior to the beginning of this suit. Appellee is not barred from relief under its cross-bill by the Statute of Limitations.

Since the deed of Giles to appellee's grantor shows that the south wall of appellant's building is partly on the land owned by appellee as trustee, it follows that appellee has the right to attach its building to that portion of the wall located on its land, in such manner as not to obstruct the free use of the passageway, and the chancellor did not err in so finding.

The decree of the superior court of Cook county will be affirmed.                                *Decree affirmed.*