No. 48,127

ALADDIN PETROLEUM CORPORATION, *Appellant*, v. GOLD CROWN PROPERTIES, INC.; GOLD CROWN, INC.; PRESIDENTIAL WOODGATE, a General Partnership consisting of Gold Crown, Inc., a Kansas Corporation, Presidential Realty Corporation, a Delaware Corporation, and M. Shapiro and Son, Inc., a New York Corporation; STEVE SCHUETZ; and COMMERCE MORTGAGE COMPANY, a Missouri Corporation, *Appellees*.

(561 P. 2d 818)

Opinion filed March 5, 1977.

*Robert L. Howard*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Phillip S. Frick*, of the same firm, was with him on the brief for the appellant.

*Edward Hund*, of Smith, Shay, Farmer & Wetta, of Wichita, argued the cause, *William Farmer* and *Paul Smith*, of the same firm, and Blair, Matlack, Rogg, Foote & Scott, were with him on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: The questions presented by this appeal concern the extent and nature of a private right-of-way easement reserved by the grantor or seller in a real estate purchase agreement. The real estate was purchased for the construction of a high-density apartment complex. The apartment complex was built. Disagreement

then arose and this action was filed by the grantor. The grantor, Aladdin Petroleum Corporation, was largely owned and controlled by George H. Bruce, its president.

The names and interests of the defendants in this action are confusing. Gold Crown Properties, Inc. is the purchaser-grantee named in the real estate purchase agreement. It is a wholly owned subsidiary of Gold Crown, Inc. The real estate was conveyed by warranty deed to Gold Crown, Inc., and later transferred to Presidential Woodgate, a partnership.

Presidential Woodgate is a general partnership consisting of Gold Crown, Inc., Presidential Realty Corporation and M. Shapiro and Son, Inc. Presidential Woodgate is now the owner of the real estate and it constructed and owns the apartment complex. In order to avoid any confusion of parties in discussing the case we will refer to Gold Crown Properties, Inc., Gold Crown, Inc., and Presidential Woodgate, the present owner, as the grantees both individually and collectively.

The additional defendants in the case are Steve Schuetz, president of Gold Crown, Inc., and the vice-president of Gold Crown Properties, Inc., and Commerce Mortgage Company, a Missouri corporation which financed and now holds a construction mortgage on the real estate and apartment complex.

So much for the parties—we now turn to the facts giving rise to the claims of the grantor, Aladdin Petroleum Corporation. The grantor was the owner of a 20 acre tract of land in Wichita, Kansas, described as the East half of the Southeast quarter of the Southwest quarter of Section 1, Township 27 South, Range 1 East of the Sixth P. M. It was bounded on the south by 21st Street. There were no access roads on the west, north and the east of this tract. The grantees wanted to acquire the south half of this tract to construct the apartment complex. The grantor requested an easement or easements for ingress and egress to the north 10 acres which he did not sell. When the contract for sale of the south 10 acres was being negotiated the parties agreed that two rows of trees that were growing along the west side of the land being sold should be preserved. It was agreed an easement between these two rows of trees from 21st Street north to the north 10 acres would be reserved by grantor for ingress and egress. The parties further agreed if the design of the apartment complex allowed (as it eventually did) a similar easement would be reserved by grantor along the east 60 feet of the acreage being sold. When the contract was drawn no

measurements had been made and none of the parties knew how much land was between the west property line and the inside row of trees. All parties agreed that 60 feet should cover the space from the west property line to and including the two rows of trees.

The contract when signed included the following paragraph:

"It is further agreed between the parties hereto that in the event the sale of the property described in paragraph one above is consummated *Seller shall reserve the right of ingress and egress along and across approximately the west 60 feet of said property, which easement shall be between the two rows of trees running north and south along the west side. Said easement shall be a perpetual easement and right-of-way for the benefit of thos[e] parties desiring access* to that property described in paragraph 1 above. In addition thereto, Seller hereby *reserves a similar easement along the east 60 feet of the property* described in paragraph 1 above. Provided, however, that in the event Buyer is unable to design a plot plan for the property described in paragraph 1 above to accommodate 184 garden apartments and 41 townhouse apartments then said easement along the east side of said property shall cease and determine. Said easements reserved by Seller shall not be effective and shall cease and determine if the property described in paragraph 7 above is utilized and/or zoned for industrial use." (Emphasis supplied.)

The parties agree that reference in this paragraph to "property described in paragraph 1 above" actually refers to the north 10 acres which grantor continues to own.

It was understood that zoning would have to be changed to permit the building of the apartment complex. A plat was submitted to the Wichita-Sedgwick County Metropolitan Area Planning Department by an engineering firm employed by the grantees. The plat, as originally drawn, referred to the 60-foot easements described in paragraph 8 of the contract. The engineering firm was advised by the planning department that "The reference to the private ingress-egress agreement and easement shall be deleted from the plattor's text." Copies of the letter were sent to grantor and grantees. The reference to the private easements was deleted and the plat detailing the location of the apartment complex was resubmitted and approved by the planning department. George H. Bruce, for the owner, signed the application for zoning change.

There is a conflict in the evidence as to just what happened when the sale was finally closed and the deed was delivered to the grantees. A separate agreement reserving the easement was never drawn. The deed of conveyance erroneously included the entire 20 acres and made reference in a general way to easements of record. However, the contract had not been recorded.

After the deed had been delivered and construction had begun,

disagreements arose between grantor and grantees. The error in the deed of conveyance was discovered. The grantees began building carports on the easement between the two rows of trees. Approximately the west 20 feet of the easement was being covered by permanent carports to be used by the persons living in the apartment complex. Between the carports and the inside row of trees a strip 24 feet in width was provided for ingress and egress. It was designated on the plat as a fire lane easement. A fire lane easement of that width was required by the Wichita building code. By separate oral agreement the grantees were to use an additional acre of the land retained by the grantor for use as a storage yard during construction. Grantor claimed that grantees had failed to fence the one acre tract as agreed and were occupying additional portions of the land which they did not own and which they refused to vacate.

The present action was filed by grantor and all claims were tried to the court. Detailed findings of fact and conclusions of law were made by the trial court. The grantor now appeals only from that portion of the judgment which deals with the easements. Its claim is for specific performance of paragraph 8 in the contract and for an injunction against the building of carports upon the easements.

In the journal entry the court held:

"A. The plaintiff, Aladdin Petroleum Corporation, is hereby granted an easement for ingress and egress which easement shall be 44.44 feet in width and is legally described as follows, to-wit:

"Beginning at a point 12.5 feet east of the northwest corner of Lot 1, Block 1, Woodgate Second Addition to Wichita, Sedgwick County, Kansas, thence south 663.86 feet, thence east 44.44 feet, thence north parallel with the west line of said Lot 1, 663.86 feet more or less to a point on the north line of said Lot 1, 56.94 feet east of the northwest corner thereof, thence west along the north line of said Lot 1 to point of beginning.

"Plaintiff, Aladdin Petroleum Corporation is hereby granted a further easement for ingress and egress which easement shall be 44.78 feet wide and is legally described as follows, to-wit:

"Beginning at a point 9.33 feet west of the northeast corner of Lot 1, Block 1, Woodgate Second Addition to Wichita, Sedgwick County, Kansas, thence south 664.35 feet, thence west 44.78 feet, thence north parallel with the east line of said Lot 1, 664.35 feet more or less to a point on the north line of said Lot 1, 54.11 feet west of the northeast corner of said Lot 1, thence east along the north line of said Lot 1 to the point of beginning."

The first description of easement includes the entire area between the two rows of trees referred to in paragraph 8 of the con-

tract. The second description includes a like area on the east side of the 10 acre tract sold to grantees.

The court made additional findings and conclusions. (In its findings and conclusions it refers to the north acreage owned by grantor as the Bruce tract and the acreage sold to grantees as the Woodgate tract.) These findings and conclusions pertinent to this appeal are:

"12. Neither party contemplated that the roadway would be completely unobstructed. Both parties expected parking, although Bruce testified he envisioned parallel parking and Scheutz planned perpendicular parking with carports.

"13. Although the now-infamous Paragraph 8 provides that the easements are for the benefit of the Woodgate tract, it was understood between the parties that the easement was to provide ingress and egress to the Bruce tract. The easements are not exclusive.

. . . . . . . . . . .

"15. The easements were not unrestricted. Their purpose was fully set forth in Exhibit 3 [real estate purchase contract] where it provides that the easements shall be a 'right-of-way for the benefit of those parties desiring access' to the Bruce tract.

"16. There is no credible evidence in this case that two roads for ingress and egress, each being 24 feet in width, do not provided reasonable access to the Bruce tract, even if the Bruce tract is developed to its highest and best use—high-density apartments similar to those on the Woodgate tract.

. . . . . . . . . . . . .

"4. . . .

"Presidential Woodgate (a general partnership) is the owner of the fee and holder of the ultimate title. They have the servient estate. Bruce [grantor] has what is called the dominant estate, and while Presidential Woodgate may not interfere with the rights of Bruce, yet, as owner, they may still continue to use the property for any purpose which does not frustrate the use for which the easement was reserved.

"5. Use by tenants and others at Woodgate Apartments of the area where the carports are located for perpendicular parking purposes is a reasonable use of the property and is not an unreasonable use and does not unreasonably interfere with plaintiff's easements.

. . . . . . . . . . . . .

"Said easements shall be for the use and benefit of the following described real property as the dominant estate:

[Legal description of the Bruce tract was inserted.]

"Said easements shall terminate if the Bruce tract is utilized and/or zoned for industrial use.

"B. The defendants, their tenants and others using the Woodgate Apartments are hereby permitted to use the area covered by the hereinabove described easements. The defendants are specifically enjoined from the use of any portion of the said easement coextensive with the twenty-four platted access and firelane easements as shown on the recorded plat of Woodgate Second Addition to Wichita, Sedgwick County, Kansas for parking and/or

any other use which would obstruct the free movement of pedestrian or vehicular traffic and shall take such action as is reasonably necessary to prevent tenants and others from parking thereon, other than temporary service vehicles."

The grantor-appellant contends that where the trial court has found the parties agreed to an easement for ingress and egress of specific width and definite boundaries, the owner of the dominant estate (grantor) is entitled to the undisturbed use of the entire way and its use may not be limited by the court to what may be considered reasonable or necessary. Appellant argues that the owners of the servient estate (grantees) may not erect substantial and permanent structures upon an easement for ingress and egress which will deprive the owner of the dominant estate of passage over the entire width of the easement.

The grantees-appellees contend the trial court did not determine that the parties agreed on a definite access way which was to run the length and the width of the easement area. They insist the court concluded that the parties merely agreed to a particular area within which a roadway would be constructed and that because the parties agreed only upon the outer boundaries of the general easement area there was a need for the court to establish a reasonable way within the general easement area, which it did.

The law appears to be settled that where the width, length and location of an easement for ingress and egress have been expressly set forth in the instrument the easement is specific and definite. The expressed terms of the grant or reservation are controlling in such case and considerations of what may be necessary or reasonable to a present use of the dominant estate are not controlling. If, however, the width, length and location of an easement for ingress and egress are not fixed by the terms of the grant or reservation the dominant estate is ordinarily entitled to a way of such width, length and location as is sufficient to afford necessary or reasonable ingress and egress.

In 3 Tiffany, Real Property, § 805, pp. 331, 332 (3d ed. 1939), it is said:

". . . A specific statement in the grant obviously governs, and such a statement is ordinarily not controlled by considerations as to what is reasonable or necessary. . . .

"If the width is not fixed by the terms of the grant, the grantee is ordinarily entitled to a way of such width as is sufficient to afford reasonable ingress and egress. . . ."

It is stated in 28 C. J. S., Easements, § 75, p. 753:

"If the grant or reservation is specific in its terms, it is decisive of the limits of the easement. On the other hand, where the easement is not specifically defined, it need only be such as is reasonably necessary and convenient for the purpose for which it was created."

In our present case the agreement for easement was expressed in paragraph 8 of the real estate purchase contract. The right of ingress and egress was established along and across approximately the west 60 feet of said property, "which easement shall be between the two row of trees running north and south along the west side. Said easement shall be a perpetual easement and right-of-way". In construing this provision it is apparent the west 60 feet of said property was a description of the general area and location of the easement area. The easement itself was limited to the specific area between two rows of trees, which amounted to a practical location of the right-of-way. The court specifically determined the width, length and location of the easements by metes and bounds descriptions and granted the same to appellant. The width, length and location were readily ascertainable by visual perception using the two rows of trees as points of reference.

There was conflicting testimony introduced during the trial in an effort to establish laches and estoppel against the plaintiff. Plaintiff was charged with having acquiesced in the building of carports and in accepting the 24 foot fire lane easement shown in the plat filed with the planning department in order to close the sale. However, the trial court specifically found: "Under the facts of this case, the plaintiff is not barred by the doctrines of laches and/or estoppel." It was further urged that the provision in the contract for easements was merged in and controlled by the terms of the deed. The court determined that the defense of merger was not applicable because it was shown the parties intended otherwise. See *Webb v. Graham*, 212 Kan. 364, Syl. 2, 510 P. 2d 1195.

A cross-appeal by defendants was filed on these issues of merger, estoppel and laches and then abandoned, so we have none of these issues before us.

Once the trial court determined and granted easements of a definite width, length and location, any additional determination of reasonableness of width was inconsistent with the nature of the easement determined. The determination of a definite easement controls. There still remains, however, the question of whether car-

ports for parking are a reasonable use by a servient estate under the facts of this case.

It is well settled that the owner of the servient tenement may use the land over which the way extends in any manner which does not reasonably interfere with its use. (*Potter v. Northern Natural Gas Co.*, 201 Kan. 528, 441 P. 2d 802; 25 Am. Jur. 2d, Easements and Licenses, § 89, p. 494; 28 C. J. S., Easements, § 91, pp. 770-771.)

It is stated in 25 Am. Jur. 2d, Easements and Licenses, § 89, pp. 494-495:

". . . [A servient owner] has, however, all the rights and benefits of ownership consistent with the easement; the right to use the land remains in him, without any express reservation to that effect, so far as such right does not conflict with the purpose and character of the easement. . . . [T]he servient owner may . . . use the way for any purpose, provided he does not interfere with the right of passage resting in the owner of the easement. . . ." (See also 28 C. J. S., Easements, § 92, p. 772.)

The trial court in support of its holding that carports should be permitted on the easement stated:

"2. There is a general rule of law that where parking on an easement unreasonably interferes with the dominant tenement's right of ingress and egress, such parking should be enjoined; that where such parking does not unreasonably interfere with the right of the holder of the dominant estate of ingress and egress, injunction will not lie. See *Cooper v. Sawyer*, 405 p. 2d 304 [394] (Hawaii, 1965), *Loveman v. Lay*, 124 So. 2d 93 (Alabama, 1960), *Keeler v. Haky*, 325 p. 2d 648 (Calif., 1958), *Feld v. Young Men's Hebrew Ass'n of Vicksburg*, 44 So. 2d 538 (Miss., 1950), *Baker v. Koslowski*, 85 A 2d 500 (Vermont, 1952). See also 37 A. L. R. 2d 944, 3 A. L. R. 3d 1256."

However, the cases cited do not, in our opinion, support the court's application of this principle to the instant case. In *Cooper v. Sawyer*, 405 P. 2d 394 (Hawaii, 1965), the court did approve parking if it did not interfere with the reasonable use of the easement, but it further held any parking would be subject to immediate moving of the parked vehicle to prevent its obstructing ingress and egress. This implies no permanent structures would have been permitted.

In *Loveman v. Lay*, 271 Ala. 385, 124 So. 2d 93, the easement was only 10 feet in width and appellant's parking interfered with ingress and egress. The court held the servient owner could not unreasonably interfere with the use of the easement by parking vehicles on it. In *Keeler v. Haky*, 160 Cal. App. 2d 471, 325 P. 2d 648, painted stalls, marked on the easement, had been assigned to tenants living on the dominant estate. The question was whether the easement was an exclusive one. The court decided permanent

parking would make the use exclusive. The court held such a use was not compatible with the terms of the grant and was not a reasonable and proper enjoyment of an easement to pass and re-pass. The parking actually interfered with the movement of ve-hicles on the easement. In *Feld, et al. v. Y. M. Hebrew Asn'n.*, 208 Miss. 451, 44 So. 2d 538, again the *owners* of the easement were enjoined from parking on the easement, so as to block it. In *Baker v. Koslowski*, 117 Vt. 124, 85 A. 2d 500, there existed a 40 foot driveway-easement. The defendant was prohibited from parking on the right-of-way so as to interfere with plaintiff's free use of it.

In none of the above cases were there permanent structures in-volved. However, the cases would indicate that parking is allowed as long as it does not unreasonably interfere with travel on the easement. The court also cites two A. L. R. annotations. The first, Anno., Private Way—Parking, 37 A. L. R. 2d, § 1, p. 944, discusses the right to park vehicles on a private way. The introductory re-marks state:

"The courts have not attempted to set forth any general principles regard-ing the question under annotation, as a whole, nor is it possible to draw any general conclusions from the decisions, in view of the fact that the decision in any particular case is dependent upon a number of variable factors, in-cluding the extent of the easement, if any, the nature of the parking, and the type of relief requested."

The annotation states that cases have generally held there exists no absolute right to park but each has a right to park thereon "at such times and in such a manner as not to interfere with its use by the other." (p. 945.) None of the cases dealt with permanent carports as is the case here; most merely concerned parking cars so as to block the access.

The second annotation, Anno., Easement—Private Way—Reason-able Use, 3 A. L. R. 3d 1256, deals with the question of whether use of an easement exceeds the privilege granted, thus unreason-ably burdening the servient estate. The cases cited involve mode of use (foot traffic or various vehicles) and extent of use (purpose for which used, amount and degree of use). None of the cases are applicable here.

A case in point is *Wurlitzer Co. v. State Bank*, 290 Ill. 72, 124 N. E. 844. There the dispute concerned the rights of the parties to a private passageway some 18 feet in width between their re-spective buildings. One of the objections of the plaintiff was that the defendant had placed upright supports or pillars in the right-of-way. The Supreme Court of Illinois, in sustaining the lower

court's determination that said pillars were violative of the rights of the plaintiff, stated at page 82:

"The right to the land in question being a right of passageway *and the boundaries of said land being defined,* it follows that the right of passageway existed as to all the land within those boundaries, and appellee had no right to obstruct any portion of it by placing thereon upright supports or pillars. *Where a right of passageway is granted over a strip of land having definite boundaries, such right extends to the full width of the tract described. . . ."* (Emphasis supplied.)

28 C. J. S., Easements, § 96, pp. 778-779, discusses what constitutes an obstruction:

"An obstruction or disturbance of an easement is anything which wrongfully interferes with the privilege to which the owner of the easement is entitled by making its use less convenient and beneficial than before. To constitute an actionable wrong it must, however, be of a material character such as will interfere with the reasonable enjoyment of the easement. . . ."

The following language then appears in § 97, p. 779:

"The owner of a right of way has no right to erect any buildings or other structures on the way; and this is so notwithstanding the presence of such structures may not interfere with the use of the way as a mere passageway. . . . The rights of the owner of the servient estate in this regard are limited to the erection of such structures as are compatible with the rights of those entitled to use the way. *If by the terms of the grant or reservation the way must be of a certain width, no structures can be erected which encroach on the width stated.* Where, however, there is merely a general undefined right of way, it is only necessary that there should be sufficient space left to afford a convenient passage. . . ." (Emphasis supplied. Accord, 3 Tiffany, Real Property, § 811, pp. 356-357 [3d ed. 1939].)

In our present case the easements described in paragraph 8 of the contract and determined by the trial court were for ingress and egress over a definite width, length and location. Construction of carports or other permanent obstructions over a portion of an easement for passage of a definite width wrongfully impairs and interferes with the privilege of passage which the owner of the definite easement holds. The carports were wrongfully constructed on the easement. The plaintiff is therefore entitled to have the carports removed and the case must be remanded with instructions directing the trial court to issue a mandatory injunction for that purpose.

The other portions of the judgment of the trial court from which no appeal was taken shall remain unaffected, including the holding that said easements shall terminate if the north 10 acres now owned by plaintiff is utilized or zoned for industrial use. It is noted the trial court held that these easements were inferior to the rights of

Commerce Mortgage Company which had no notice of the easements, either actual or constructive. No appeal was taken from those portions of the judgment and they stand adjudicated.

The judgment of the trial court as to the extent of the rights of the grantor and grantees under the easements is reversed and the case is remanded with directions to proceed in accordance with the opinions expressed herein.