NOT DESIGNATED FOR PUBLICATION

No. 118,980

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ARTHUR L. GARN and KAREN J. GARN,
*Plaintiffs/Appellees*,

v.

MICHAEL W. HIGGINS,
*Defendant/Appellant*,

and

TRUSTEES OF MISSION CREEK TOWNSHIP OF WABAUNSEE COUNTY,
*Defendants/Appellees*.

MEMORANDUM OPINION

Appeal from Wabaunsee District Court; JEFFREY R. ELDER, judge. Opinion filed February 15, 2019. Affirmed.

*Bob W. Storey*, of Bob W. Storey, P.A., of Topeka, for appellant.

*Gregory A. Lee*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, and *John Waugh*, of The Waugh Law Office, of Eskridge, for appellees Arthur L. Garn and Karen J. Garn.

Before GARDNER, P.J., ATCHESON and POWELL, JJ.

PER CURIAM: After a hearing on cross-motions for summary judgment, the Wabaunsee County District Court ruled that Plaintiffs Arthur and Karen Garn had an easement entitling them to use a private roadway across property owned by Defendant Michael W. Higgins to get to their home. The roadway functions as an extended

1

driveway for the Garns. The district court ordered Higgins to remove a gate he had constructed across the roadway. Higgins has appealed and principally argues the evidence presented to the district court did not warrant summary judgment for the Garns. Alternatively, Higgins contends he was deprived of the opportunity to present all of his evidence on the need for the gate. We find no error and affirm the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1956, the owners of the land Higgins later purchased executed an easement granting access from a county road in rural Wabaunsee County across their land to an adjacent tract of land to the east, thereby permitting ingress and egress to the easterly parcel. The Garn family acquired the 320-acre eastern tract in 1960. Arthur and Karen Garn now own the land and have lived there since 2006. Higgins purchased the property subject to the easement in late 2015 from the Kitchens family. He says he learned of the easement only after buying the land.

The easement affords the Garns use of the private roadway to reach their home and outbuildings from a nearby county road. According to the district court's journal entry, the private roadway is between one-half and three-quarters of a mile long. The land subject to the easement has been used to pasture cattle. For years, the landowners successfully used a cattle guard to keep livestock from escaping.

Shortly after buying the land, Higgins replaced the cattle guard with a gate across the roadway. Initially, Higgins locked the gate but later removed the lock. After that, the Garns filed suit in July 2016 asserting various causes of action and seeking removal of the gate as one form of relief. Higgins duly answered, and the parties undertook discovery.

2

Higgins filed a motion for summary judgment, and the Garns filed their own motion for summary judgment about a week later, which functionally became a cross-motion. At some point, Higgins and the Garns specifically requested the district court to rule on whether Higgins could maintain the gate consistent with the easement as a distinct issue apart from any argument the roadway constituted a public right-of-way. The district court invited them to submit supplemental briefing on that point, and they did.[1]

[1]In their amended petition, the Garns sued Higgins and Mission Creek Township, through its trustees. They alleged the roadway across Higgins' property legally should be considered a township road. On that theory, Mission Creek Township would be responsible for maintenance of the roadway, and Higgins arguably would have no right to obstruct the roadway with a gate. The district court granted the township's motion for summary judgment, while reserving ruling on the Garns' claims against Higgins. The Garns have not cross-appealed the judgment in favor of the township, so the issue of the roadway as a public right-of-way is not before us.

In their summary judgment papers, the Garns argued that the gate amounted to a legally impermissible burden on their right of ingress and egress created through the easement. They pointed out that to pass through the gate, one of them had to get out of their vehicle, open the gate, get back in, drive through the gate, and get in and out again to close the gate. In a May 31, 2017 affidavit, Arthur Garns stated he was 65 years old and had a bulging disc in his lower back, suffered from degenerative arthritis, and had undergone two knee replacement surgeries. He characterized himself as "disabled" because of those conditions and declared he found it "increasingly more difficult" to negotiate the gate going to and from his home. Arthur Garn's physical condition was undisputed in the summary judgment materials.

In the affidavit, Arthur Garn also represented that private delivery services would not go through the gate and routinely left parcels for him and his wife at the gate. As a result, they sometimes did not know about the deliveries for a day or more, exposing the packages to the elements during that time. That representation was also uncontroverted.

3

Higgins submitted a June 19, 2017 affidavit to the district court in which he stated he operated a quarry on land next to the Garns' property for more than 20 years. Based on the argument to the district court, we understand Higgins intended to expand the quarry operation to the land he purchased from the Kitchens. In its journal entry, the district court acknowledged the quarry but made no finding regarding expansion. In the affidavit, Higgins asserted without elaboration that "[a] gate is necessary to keep the cattle in the pasture as well as to inhibit trespassing." He stated stray cattle would pose a danger to motorists traveling on the adjacent county road.

In November 2017, the district court heard oral argument from the lawyers for the Garns and Higgins on their summary judgment submissions directed at whether the unlocked gate unreasonably interfered with the easement. The district court then filed a journal entry in January 2018 granting summary judgment for the Garns and ordered Higgins to remove the gate. Higgins has appealed.

LEGAL ANALYSIS

*Summary Judgment Standards*

The standards for granting summary judgment and reviewing the judgment on appeal are well known. A party seeking summary judgment has the obligation to show, based on appropriate evidentiary materials, there are no disputed issues of material fact and judgment may, therefore, be entered in its favor as a matter of law. *Trear v. Chamberlain*, 308 Kan. 932, 935, 425 P.3d 297 (2018); *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). In essence, the movant argues there is nothing for a jury or a trial judge sitting as fact-finder to decide that would make any difference. The party opposing summary judgment must then point to evidence calling into question a material factual representation made in support of the motion.

4

*Trear*, 308 Kan. at 935-36; *Shamberg*, 289 Kan. at 900. If the opposing party does so, the motion should be denied so a fact-finder may resolve that dispute.

In ruling on a summary judgment request, the district court must view the evidence most favorably to the party opposing the motion and give that party the benefit of every reasonable inference that might be drawn from the evidentiary record. *Trear*, 308 Kan. at 935-36; *Shamberg*, 289 Kan. at 900. An appellate court applies the same standards in reviewing the entry of a summary judgment. *Trear*, 308 Kan. at 936. Because entry of summary judgment amounts to a question of law—it entails the application of legal principles to uncontroverted facts—an appellate court owes no deference to the trial court's decision to grant the motion and review is unlimited. See *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 584, 214 P.3d 1173 (2009); *Golden v. Den-Mat Corporation*, 47 Kan. App. 2d 450, 460, 276 P.3d 773 (2012).

As the summary judgment standards recognize, juries or district court judges presiding in bench trials ordinarily decide fact questions. But that is not invariably true. A district court may grant summary judgment if the material facts are undisputed or any disputes are resolved in favor of the party opposing the motion and that view of the evidence shows either that no reasonable jury could find for the opposing party or that the moving party is otherwise entitled to judgment as a matter of law. See *Lumry v. State*, 305 Kan. 545, 566, 385 P.3d 479 (2016) (summary judgment appropriate when "'no genuine issue as to any material fact'" and those facts show moving party "'entitled to judgment as a matter of law'") (quoting K.S.A. 2015 Supp. 60-256[c][2]); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 276, 261 P.3d 943 (2011) ("Should the evidence taken in the best light for a plaintiff nonetheless fail to establish a basis for a jury to return a verdict for that plaintiff, the court may enter a summary judgment for the defendant.").

Where, as here, each party has filed a motion for summary judgment, the district court has no broader authority to grant one of the motions. Each motion must be separately and independently reviewed using the standards we have outlined. *Wheeler v. Rolling Door Co.*, 33 Kan. App. 2d 787, 790-91, 109 P.3d 1255 (2005); *Jones v. Noblit*, No. 100,924, 2011 WL 4716337, at *1 (Kan. App. 2011) (unpublished opinion). In short, the filing of cross-motions does not afford the district court a license to decide a case on summary judgment.

*Legal Principles Bearing on Easements*

An easement establishes a party's right to enter a tract of land owned by another and to use some portion of the land for a specific purpose. See *Smith v. Harris*, 181 Kan. 237, 246-47, 311 P.2d 325 (1957); Black's Law Dictionary 622 (10th ed. 2014) (definition of "easement"). An easement, then, diminishes the owner's fee simple right to unfettered use of the land. Easements may be created by grant, typically embodied in a written instrument, or by necessity. The easement here was by written grant and became a burden on the tract Higgins bought, so it passed from owner to owner with the land. *Smith*, 181 Kan. at 246-47 (easement considered "interest in land" and "in the nature of a covenant running with the land"). In the parlance of property law, that made Higgins' tract the servient estate or tenement. Black's Law Dictionary 667 (10th ed. 2014) (definition of "estate," meaning 4). As we have explained, the easement allowed the owner of the Garn tract—the dominant estate or tenement—ingress and egress from the county road across the servient estate. The easement effectively created a driveway from the county road to the Garns' property, albeit across someone else's land.

Easements may be characterized as either specific or blanket. As the terms suggest, a specific easement entails a detailed statement of the right and an identification, often by legal description, of the particular area of the servient estate subject to the right. Conversely, a blanket easement simply states the right generally. See *Brown v.*

6

*ConocoPhillips Pipeline Co.*, 47 Kan. App. 2d 26, 33-34, 271 P.3d 1269 (2012). The easement here is specific: It grants a right of ingress and egress "for the purpose of going to and coming from" the tract the Garns now own and includes a legal description of a route across the tract Higgins now owns.

Courts enforce unambiguous terms of a specific easement as they are written or otherwise established. 47 Kan. App. 2d at 33. But the grant here is silent about gates—it neither permits nor prohibits them. Nor does the grant address any other limitations on use of the easement, such as size of vehicles or volume of traffic. Absent an express term covering a particular aspect of an easement, reasonableness governs in light of the underlying purpose of the easement. See *Aladdin Petroleum Corporation v. Gold Crown Properties, Inc.*, 221 Kan. 579, 584, 561 P.2d 818 (1977); *Southern Star Central Gas Pipeline, Inc. v. Cunning*, 37 Kan. App. 2d 807, 813-14, 157 P.3d 1120 (2007) (absent precise terms, as with blanket easement, courts consider materiality of encroachment and reasonable enjoyment or use in assessing scope of or interference with easement).

We do not understand the parties to be disputing those principles or their application to the ingress-egress easement.[2]

[2]In his affidavit, Higgins suggested the roadway deviates from the easement as described in the grant. But the parties have not made an issue of any purported variance between the route fixed in the grant and the actual roadway used for ingress and egress (apparently for years if not decades). The issue here is impairment of the right of ingress and egress and not the precise path used.

The holder of an easement must act reasonably in exercising the right granted. See *Spears v. Kansas City Power & Light Co.*, 203 Kan. 520, 529, 455 P.2d 496 (1969) (acknowledging rule but finding it inapplicable to issues litigated); *Holmes v. Sprint United Telephone of Kansas*, 29 Kan. App. 2d 1019, 1022, 35 P.3d 928 (2001). And the owner of the servient estate retains the right to use his or her land in any manner compatible with a reasonable exercise of the easement. *Aladdin Petroleum*, 221 Kan. at

7

586. By the same token, the owner of the servient estate may not interfere with the right conferred in an easement. But interference with or impediment of an easement will be actionable only when it materially disrupts the reasonable exercise or use of the easement. 221 Kan. at 588. The degree of disruption largely depends upon the particular circumstances, including the purpose of the easement and the specific nature of the interference. See *Brown*, 47 Kan. App. 2d at 36-37 (interference with easement measured by facts of case).

The Garns and Higgins have joined their legal battle over competing characterizations of the reasonableness of gating the roadway. Issues ground in "reasonableness under the circumstances" typically present questions of fact. We presume that to be true of the keystone point of contention here. Other courts and commentators look at disputes turning on interference with easements that way. *Morgan v. New Sweden Irr. Dist.*, 156 Idaho 247, 256, 322 P.3d 980 (2014); *Teal v. Lee*, 506 S.W.2d 492, 497 (Mo. App. 1974) (whether fence or gate violates right-of-way easement considered "in general" to be question of fact taking into account array of considerations); *D'Abbracci v. Shaw-Bastian*, 201 Or. App. 108, 117, 117 P.3d 1032 (2005); 28A C.J.S. Easements § 270 (interference with easement ordinarily question of fact). But, as we have explained, a district court is not precluded from granting summary judgment simply because the outcome of a dispute turns on a question of fact. Summary judgment may nonetheless be appropriate if the material facts are undisputed or if the nonmoving party cannot prevail even on its most favorable version of the facts. This case fits in that category. Cf. *Stroda v. Joice Holdings*, 288 Kan. 718, 720, 207 P.3d 223 (2009) (scope of implied easement properly considered on summary judgment because material facts undisputed).

*Summary Judgment Evidence Considered*

The undisputed facts demonstrate that Arthur Garn is physically disabled, and his disabilities prevent him from readily navigating the roadway with an unlocked gate in

place. The gate materially impedes his use of the easement. Secondarily, the unlocked gate prevents the Garns from receiving packages shipped by private delivery services at their residence, as would be customarily expected. The negative effect on deliveries also diminishes the easement, since the right of ingress and egress is not confined to the Garns personally and extends to their social and business invitees. Based on the summary judgment evidence, both are concerns to the Garns. But the disruption to Arthur Garn as he travels between his home and the county road is of paramount significance.

We do not, however, measure the impediments to the Garns in a vacuum. The gate did not obliterate their ability to reach their home, so the easement had not been rendered wholly ineffective. The owner of a servient estate may impose some burden on an easement if necessary for a reasonable use of the land in a certain way. Although the gate measurably impaired the Garns' right of ingress and egress, we must examine the purposes Higgins advanced for constructing the gate to assess whether the impairment was unreasonable.

First, Higgins stated the gate inhibited trespassing—a purported benefit we understand he tied to the quarry operation. In his affidavit and other summary judgment materials, he did not elaborate on this notion. We failed to see how an unlocked gate would appreciably deter even a modestly motived trespasser. Higgins offered no evidence that the quarry had been afflicted with trespassers or thieves. Nor did he explain how his plan to expand the quarry might require enhanced security that an unlocked gate would provide.

Second, Higgins stated the gate kept his grazing cattle from ambling onto the county road, where they would pose a hazard. Owners of livestock have a duty of care to prevent the escape of their animals. See K.S.A. 47-123 (owner of livestock "run[ning] at large" liable for damages to person injured as result). But Higgins removed a cattle guard from the roadway that, based on the summary judgment evidence, had been effective in

9

preventing cattle from escaping. Higgins, therefore, couldn't justify the burden the gate imposed on the Garns' ingress-egress easement as necessary to confine cattle grazing on the servient estate.

In his affidavit, Higgins stated the Garns had a locked gate on their property and included a photograph of the lock and chain securing the gate. But the affidavit did not establish where the gate was located or its purpose. That rather abstract assertion doesn't diminish the negative impact Higgins' gate had on the Garns' right of ingress and egress permitted through the easement. The district court noted and correctly discounted Higgins' representation as irrelevant given its vagueness.

The undisputed summary judgment evidence established that the gate materially burdened the easement with neither a tangible nor a unique benefit to Higgins and his land. Higgins offered conclusory and unsupported assertions to resist the Garns' motion. Those representations were insufficient notwithstanding the relatively slight evidentiary obligation cast upon a party opposing summary judgment. See *RAMA Operating Co. v. Barker*, 47 Kan. App. 2d 1020, Syl. ¶ 6, 286 P.3d 1138 (2012) (affidavits used to support or oppose summary judgment must "set forth specific facts"); *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1244 (10th Cir. 2010) (party opposing summary judgment may not rely on "conclusory" affidavits but must set forth facts that would be admissible as evidence at trial); *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 978 (10th Cir. 2008) ("'affidavit evidence'" submitted in opposition to summary judgment may fail to create a material factual dispute if it is "'nonspecific . . . vague, conclusory, or self-serving'" [quoting *Piercy v. Maketa*, 480 F.3d 1192, 1197-98 (10th Cir. 2007)]). Given the evidentiary record presented on summary judgment, the district court properly granted the Garns' cross-motion and denied Higgins' motion.[3]

[3]By way of counterpoint, we mention this court's decision in *Schroeder v. Urban*, 13 Kan. App. 2d 164, 766 P.2d 188 (1988). Schroeder and Urban had serially litigated property disputes over adjacent tracks of land they owned. Urban had an

easement across Schroeder's land to reach the 40-acre tract he owned. One of the issues in that case arose over Schroeder putting fencing with a gate across Urban's easement when he pastured cattle. The evidence showed that the fencing and gate were intermittently in place for 10 to 30 days at a time and not at all in some years. Urban testified that he did not mind opening and closing the gate while using the easement. Without much discussion, the court affirmed the district court's ruling that, under the circumstances, the fencing and gate did not unreasonably interfere with Urban's easement. The facts here are materially different. Higgins' gate was a permanent impediment to the Garns' easement rather than an interment and distinctly infrequent one. And the Garns had genuine objections to the gate as a material burden on their right of ingress and egress.

*Opportunity to Present Evidence*

On appeal, Higgins contends the district court deprived him of the opportunity to present all of his relevant evidence bearing on the need for a gate and the impact of the gate on the Garns. But he fails to explain how he was kept from marshalling evidence. Higgins presumably could have included relevant factual representations in his affidavit explaining why the gate was important. He owned the quarry and the pastureland and would have been familiar with how those uses of his land conceivably might have required a gate on the roadway. Higgins chose not to develop those facts in his affidavit or to supplement his affidavit with other evidence. As a party, Higgins was anything but a reluctant or missing witness. So the factual shortcomings of his affidavit cannot be laid off on the district court.

If Higgins believed he needed to undertake additional formal discovery, such as depositions or requests for production or subpoenas of business records and other documents, to successfully oppose the Garns' motion, K.S.A. 2017 Supp. 60-256(f)(2) provided him with the procedural means for doing so. The statute allows the district court to give a party responding to a motion for summary judgment additional time specifically to take depositions or complete other essential discovery. K.S.A. 2017 Supp. 60-256(f)(2); see *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 966, 186 P.3d 829 (2008). Although the decision to allow an extension rests in the district

11

court's discretion, Higgins did not even ask. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013) (denial of 60-256[f] request for additional discovery reviewed for abuse of discretion). The district court can't be faulted on that score, either.

Higgins was not unfairly or impermissibly deprived of the opportunity to fully support his own motion for summary judgment or to oppose the Garns' cross-motion.

Affirmed.

* * *

POWELL, J., concurring: I concur with the result.