NOT DESIGNATED FOR PUBLICATION

No. 127,165

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TRACY PRESNELL, Trustee of the TRACY A. and
DARLA J. PRESNELL REVOCABLE TRUST,
*Plaintiff*,

and

TRACY PRESNELL, Individually,
*Appellant*,

v.

CENTRAL KANSAS CONSERVANCY, INC.,
*Appellee*,

v.

TRACY PRESNELL,
*Appellant*.


MEMORANDUM OPINION

Appeal from McPherson District Court; MARILYN M. WILDER, judge. Submitted without oral argument. Opinion filed September 26, 2025. Affirmed.

*Tracy Presnell*, appellant pro se.

*Michael T. Mills*, of McPherson, for appellee.


Before WARNER, C.J., ARNOLD-BURGER and BRUNS, JJ.

1

WARNER, C.J.: This case is the latest in a series of legal disputes involving the development of a recreational trail in McPherson County. That trail, commonly known as the Meadowlark Trail, is part of a rails-to-trails project that has been discussed since the 1990s. About a quarter mile of the trail extends across an easement on property now owned by Tracy Presnell.

Presnell's family has been challenging the development of the Meadowlark Trail for decades. In 2018, Presnell filed this case against the Central Kansas Conservancy (the holder of the trail easement), raising claims regarding the Kansas Recreational Trails Act and adverse possession. The Conservancy counterclaimed, arguing Presnell had intentionally obstructed its easement to prevent it from developing the trail. The district court ultimately ruled in the Conservancy's favor, finding it had the right to develop the trail on its easement and Presnell had improperly interfered with that right. It also ordered Presnell to pay $15,000 in punitive damages based on his intentional interference with the trail easement.

Presnell appeals, challenging several aspects of the district court's ruling. But after carefully reviewing the record and the parties' arguments, we do not find these challenges persuasive. We thus affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The land at the heart of this dispute, located in McPherson County, is about 66 feet wide and a quarter mile in length. It is part of a larger, 12.6-mile line of former railroad track that was converted from railway to a public recreational trail under the National Trails System Act of 1968 (NTSA). Disputes surrounding the development of this 12.6-mile trail—commonly known as the Meadowlark Trail—have spanned nearly three decades.

The NTSA allows state, political, or qualified private organizations to assume the responsibility and management of railroad rights-of-way as public trails without considering the transfer an abandonment by the railroad company. 16 U.S.C. § 1247(d). When a railroad company reaches an agreement with another entity to assume care of the rail corridor, the rail is considered "railbanked," and the entity may begin development of the rail line into a recreational trail.

When a railroad company is negotiating an agreement to railbank a rail line for use as a public recreational trail under the NTSA, it requests an exemption from the Surface Transportation Board called a Notice of Interim Trail Use. Once the Board issues this notice, a railroad company has 180 days to negotiate an agreement for interim trail use with a qualified trail operator, such as a city or nonprofit organization. The Board may extend the initial 180-day period to aid the parties in reaching an agreement.

*Union Pacific transfers the trail easement to the Conservancy.*

In the 1990s, Presnell's father, Robert Presnell, owned the land at issue subject to an easement with the Union Pacific Railroad. In June 1995, Union Pacific requested an exemption from the Board because it intended to end rail service between mile post 518.0 near McPherson and mile post 530.6 near Lindsborg. The Board approved the request and issued a Notice of Interim Trail Use in September 1995, and Union Pacific began negotiating with several groups about assuming the right-of-way for development as a recreational trail.

The Board extended the 180-day negotiating period three times between September 1995 and April 1997. The Conservancy, a nonprofit corporation headquartered in McPherson, joined the negotiations during that timeframe as a group interested in developing the trail. On April 16, 1997, Union Pacific concluded negotiations, having reached an agreement with the Conservancy. The railroad

3

transferred its title and interest of the easement to the Conservancy via quitclaim deed and executed a line donation contract, affirming that the contract and deed conformed to the NTSA for use of the rail corridor as a public trail.

*Decades of litigation ensue.*

While Union Pacific worked through the process of railbanking its track, the Kansas Legislature passed the Kansas Recreational Trails Act (KRTA), K.S.A. 58-3211 et seq. The KRTA took effect July 1, 1996, and defined Kansas requirements for responsible parties for railbanked trails under the NTSA. L. 1996, ch. 223, §§ 1, 3, 7. Notably, the KRTA required "the responsible party" to complete development of a trail within a defined period—two years times the number of counties in which the trail was located. K.S.A. 58-3213(c). The KRTA specified that this time limitation applied only when a federal agency authorized negotiations for a railbank agreement on or after July 1, 1996. K.S.A. 58-3213(d).

Since that time, the relationship between the Conservancy and the Presnell family has been acrimonious, to say the least. Robert Presnell joined in federal litigation with other adjacent landowners in an effort to prevent the Conservancy from developing the trail. See *Barclay v. United States*, 351 F. Supp. 2d 1169, 1171-73 (D. Kan. 2004). The owners of the property affected by the railroad right-of-way alleged the conversion of the rail to a public trail constituted a taking under the Fifth Amendment to the United States Constitution. The federal district court found the lawsuit was barred by the statute of limitations, and the United States Court of Appeals for the Federal Circuit affirmed this decision on appeal. *Barclay v. United States*, 443 F.3d 1368, 1378 (Fed. Cir. 2006).

Robert Presnell also attempted to prevent the Conservancy from accessing the disputed land by extrajudicial means. He removed the Conservancy's "No Trespassing" signs and installed fencing around portions of the corridor. He also sent a letter to the

4

Conservancy in February 2001, arguing it had forfeited the right to develop the trail because it had not completed the trail within two years, as provided by the KRTA.

Robert Presnell passed away in 2017, and his land was transferred to the Tracy A. and Darla J. Presnell Revocable Trust. In July 2018, Tracy Presnell erected another fence to completely block access to the easement. A month later, the Conservancy removed the fencing erected by Presnell so it could start developing the trail.

*Presnell files the current lawsuit and other concurrent litigation.*

Presnell filed this lawsuit on behalf of the Trust in December 2018. Proceeding without counsel, Presnell argued that (1) the Conservancy failed to develop a trail on the disputed land within the time limit mandated by the KRTA; (2) he had acquired the land by adverse possession or, in the alternative, had established a prescriptive easement superior to the Conservancy's easement to develop the property; and (3) injunctive relief was necessary to prevent the Conservancy from removing vegetation, placing limestone on the property, or opening the property to the public for use as a recreational trail.

Presnell filed two other lawsuits against the Conservancy around the same time:

- In the first case, Presnell filed a small claims action, alleging that the Conservancy did not have the right to cut down vegetation on the trail easement, that it had trespassed on his property, and that he was entitled to damages. On appeal, this court affirmed the district court's conclusion that the Conservancy had the right to remove vegetation from the easement, it did not overstep its use of the easement by removing the vegetation, Presnell was not entitled to damages, and the Conservancy was entitled to attorney fees. *Presnell v. Cullen*, No. 123,877, 2022 WL 1436058 (Kan. App.) (unpublished opinion), *rev. denied* 316 Kan. 758 (2022).

5

- In the second case, Presnell again alleged that the Conservancy had cut down vegetation (different from the vegetation in the first suit). Presnell admitted that the vegetation the Conservancy removed was within the boundaries of the easement but claimed that it had unnecessarily trespassed on his property, and he was entitled to damages for trespassing and conversion of property. On appeal, this court found that based on its holding in the first case, Presnell's claims were barred by res judicata. *Presnell v. Central Kansas Conservancy, Inc.*, No. 124,135, 2022 WL 1436061 (Kan. App.) (unpublished opinion), *rev. denied* 316 Kan. 758 (2022).

As these disputes were ongoing, Presnell's neighbors also challenged the development of the Meadowlark Trail. In particular, two neighbors filed a lawsuit arguing—like Presnell and his father—that the development of the Meadowlark Trail was subject to the KRTA and was required to have been developed within two years of when the Conservancy acquired the easement in 1997. The district court disagreed and entered judgment for the Conservancy. This court affirmed that decision, holding that the KRTA did not apply to easements that resulted from negotiations when railroads had begun the railbanking process before July 1, 1996 (as Union Pacific had here). See *Central Kansas Conservancy v. Sides*, 56 Kan. App. 2d 1099, Syl. ¶ 2, 443 P.3d 337, *rev. denied* 310 Kan. 1061 (2019).

The Conservancy relied on the opinion in *Sides* in its answer to Presnell's petition in this case. The Conservancy also asserted counterclaims of trespass and harassment, requesting damages and an order restraining Presnell from any conduct that would inhibit development of the trail.

Several months later, the Conservancy filed a motion to dismiss the Trust's claims, pointing out that Presnell—who is not a lawyer—cannot represent the Trust and could

6

only pursue claims on his own behalf. In response to this motion, Presnell (in his role as trustee) transferred the property owned by the Trust to his wife and co-trustee, Darla Presnell, who then transferred the property to Presnell. Presnell then filed a motion to substitute parties. The district court denied Presnell's motion based on its concern that the Presnells might transfer the property again and seek to relitigate its holding. The court allowed Presnell, however, to represent himself and his property interest.

Shortly before trial, the district court allowed the Conservancy to amend its counterclaim to seek punitive damages and sanctions against Presnell. The court eventually ruled in favor of the Conservancy on all Presnell's claims and on the Conservancy's counterclaim that Presnell had intentionally obstructed and impeded its ability to use its easement to develop the Meadowlark Trail. The court entered a permanent restraining order against Presnell, denied the Conservancy's request for sanctions, and ordered Presnell to pay $15,000 in punitive damages.

DISCUSSION

Presnell has appealed, challenging each of the district court's adverse rulings. Presnell's primary arguments concern this court's decision in *Sides*, which involved challenges to the Meadowlark Trail in a lawsuit brought by Presnell's neighbors. In *Sides*, a panel of this court held that the KRTA's requirement that a trail be developed within two years of approval did not apply to the Meadowlark Trail because the Board had issued the original Notice of Interim Trail Use to begin railbanking negotiations for this easement before the KRTA was enacted. 56 Kan. App. 2d at 1121-23. *Sides* also found that Kansas law precluded someone from adversely possessing a railbanked trail easement, as those easements create trails for public use. 56 Kan. App. 2d at 1119. Presnell challenges both conclusions—and the district court's reliance on those conclusions—in this appeal.

But contrary to Presnell's assertions, the district court properly relied on *Sides* as a published decision of a reviewing court when it denied Presnell's KRTA and adverse-possession claims. See *State v. Clark*, 313 Kan. 556, 565, 486 P.3d 591 (2021). And although we are not bound by the decisions of other panels of this court, see *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018), we reach the same conclusions as the *Sides* panel on the relevant issues in this case. We also find the district court's other conclusions—that Presnell improperly interfered with and obstructed the Conservancy's easement and must pay punitive damages as a result of that conduct—are proper and reasonable. We thus affirm the district court's judgment.

1. *The* Sides *panel correctly interpreted the Kansas Rails to Trails Act to conclude its two-year development window does not apply to the Meadowlark Trail.*

As we have noted, the KRTA took effect on July 1, 1996. L. 1996, ch. 223, § 7. That Act requires, among other things, that recreational trails be developed "within a period of time equal to two years times the number of counties in which the recreational trail is located." K.S.A. 58-3213(c). (The parties here agree that this period is two years, as the Meadowlark Trail is only located in McPherson County.) The Act explains that if "the responsible party fails to comply" with the KRTA's provisions—including the development window—"any adjacent property owner, city or county aggrieved by the noncompliance may bring an action in the district court to enforce the provisions of this act." K.S.A. 2024 Supp. 58-3215. A district court may then "enter an order requiring the responsible party to comply with the provisions of [the] act"—relevant here, complete development of the trail. K.S.A. 2024 Supp. 58-3215.

The KRTA further clarifies that there are multiple acts that could exempt a group from this development window or otherwise toll its application. Most relevant to our discussion here, the Act's development window applies "to only recreational trails for which approval to enter into negotiations for interim trail use is received from the

8

appropriate federal agency on or after the effective date of this act." K.S.A. 58-3213(d). The Act also states that the development window is tolled while "any court action challenging the development or use of the trail" is pending. K.S.A. 58-3213(c).

This court considered these provisions in *Sides* and reached two conclusions that are pertinent to the issues raised in this case:

- *First*, the court interpreted K.S.A. 58-3213(d) to exclude from the development window a trail when the original Notice of Interim Trail Use was approved before July 1, 1996, regardless of whether the easement was actually transferred before that date. Thus, the Meadowlark Trail was exempted from that development window because the Board approved the original notice in September 1995— despite the fact that the Conservancy officially did not obtain the right to the easement until April 1997. *Sides*, 56 Kan. App. 2d at 1122-24.

- *Second*, the court found that even if the development window were to apply to the Meadowlark Trail, the failure to develop a trail during that window did not forfeit any ability to develop that trail in the future. Rather, the only remedy the KRTA provided was to seek a court order requiring the trail to be developed as planned. 56 Kan. App. 2d at 1125-27. The court explained that if the legislature intended to include other remedies, it could have done so. But it did not. 56 Kan. App. 2d at 1126. And the court questioned whether a Kansas court would have the authority to divest a party of an easement that had been granted by a federal agency (such as the Board) and specifically held as a placeholder for potential railroad use. 56 Kan. App. 2d at 1125, 1127.

Presnell challenges both rulings here. He urges us to interpret K.S.A. 58-3213(d) to exempt trails only where the ultimate holder of the trail easement entered negotiations with the railroad before the KRTA went into effect. (He asserts the Conservancy did not

9

enter into negotiations until the spring of 1997, after that KRTA took effect, and thus the development window should apply.) And he argues that the *Sides* court unnecessarily restricted the remedy he could seek from a Kansas court if the Meadowlark Trail was not developed within two years after the trail easement was acquired.

We have independently reviewed the relevant statutes in detail and have reached the same conclusion as the *Sides* court. Indeed, we find the *Sides* analysis to be well-articulated and thorough. We need not retread that ground here.

We add, however, that the language of the KRTA demonstrates that the Kansas Legislature intended to attach certain requirements when an easement holder—what the Act calls the "[r]esponsible party"—acquired the right to develop and use a trail easement. See K.S.A. 58-3211(c). For example, the KRTA requires "the responsible party" to give written notice to all adjacent property owners of its intent to build a recreational trail "[u]pon receipt of permission from the appropriate federal agency to enter into negotiations for interim trail use." K.S.A. 58-3213(a). The KRTA sets out several requirements that "the responsible party" must undertake before it develops or operates a recreational trail. K.S.A. 58-3213(b). And, of course, "[t]he responsible party" must complete development of the trail within the window set forth in K.S.A. 58-3213(c).

Despite these multiple limitations on the actions of the easement holder throughout the KRTA, K.S.A. 58-3213(d) does not mention the "responsible party" at all. Instead, that section states the development window and accompanying requirements apply only to trails "for which approval to enter into negotiations for interim trail use is received from the appropriate agency on or after" the KRTA went into effect. K.S.A. 58-3213(d). The decision not to tie this to the responsible party, but instead to speak in general terms, indicates an intent by the legislature to exempt trails—like the future Meadowlark Trail—that had already been generally approved for negotiations by the Board before the KRTA was enacted. Accord *Roe v. Phillips County Hospital*, 317 Kan.

1, 5-6, 522 P.3d 277 (2023) (recognizing that courts presume the legislature differentiates between phrases for a reason). Thus, the *Sides* panel's interpretation of K.S.A. 58-3213 is reasonable and consistent with the statutory language adopted in K.S.A. 58-3213.

This legislative intent also makes practical sense. By exempting easements where the Board had already approved a railroad company to negotiate potential railbanking options, the Kansas Legislature provided clarity by allowing the company to continue the manner it had been negotiating previously (rather than adding more requirements for potential transferees midway through that process).

We acknowledge that this interpretation of K.S.A. 58-3213(d) likely will have little application beyond the Meadowlark Trail, given the extensive litigative history over that trail spanning nearly three decades. Perhaps more importantly, we also agree with the *Sides* panel that even if the KRTA imposed a timeframe for developing the Meadowlark Trail, that Act would only allow Presnell to seek a court order requiring that trail to be developed. See K.S.A. 2024 Supp. 58-3215. The Act did not allow a Kansas court to divest the easement holder of its property rights or to otherwise interfere with the railbanking agreement with Union Pacific—an agreement that had been approved by the federal agency. In other words, there is no support in the KRTA for the only remedy Presnell sought in this case.

In his brief, Presnell attempts to undermine the *Sides* reasoning in several respects. For example, he questions whether the opinion's syllabus accurately reflects its holding. He asserts the opinion includes a misstatement of fact as to when the Conservancy's predecessor organization entered into negotiations with Union Pacific. And he questions whether preventing a group from developing a trail easement would violate federal law under the NTSA. We need not discuss these arguments further here, as they all hinge on his erroneous beliefs (1) that the development window would apply and (2) that the failure to complete the development of the trail within two years divested the

11

Conservancy of its easement rights. As we have noted, we do not find these arguments persuasive.

Before turning to the other issues raised in Presnell's appeal, we—like the district court—pause to comment on the nature of Presnell's assertions. The Conservancy obtained the right to develop the Meadowlark Trail on April 16, 1997. Since then, the record demonstrates that Presnell's father and then Presnell actively attempted to prevent development of that trail. They did so by placing fencing across the trail and using equipment to obstruct access to the trail, as well as through filing or joining in several lawsuits in federal and state courts. As the district court observed in denying Presnell's motion for summary judgment in this case:

> "At least one reason for [the Conservancy's] delays in [developing the Meadowlark Trail] could reasonably be the great opposition to the trail by Mr. Presnell and others and the time and money spent in that litigation. There was litigation in federal court in the *Barclay v. United States*, 351 F. Supp. 2d 1169 (2004) and 443 F.3d 1368 (2006), . . . and in *Swisher v. Central Kansas Conservancy*, 1999 U.S. Dist. LEXIS 14979 and *Swisher v. United States*, 176 F. Supp. 2d 1100 (2001). Mr. Presnell's father was part of the Barclay litigation and the Swisher litigation against [the Conservancy]. There was litigation before the Surface Transportation Board numerous times, . . . and this Court is aware that Mr. Presnell intervened in litigation before the Kansas Board of Tax Appeals . . . when [the Conservancy] applied for a property tax exemption to argue against the grant of that exemption. Finally, there is the Sides litigation that remains ongoing now seven years after it was filed. That persistent litigation over the course now of roughly 20 years or more has no doubt slowed progress on trail development."

We add to this litany that three of Presnell's lawsuits against the Conservancy have reached this court in the six years since the *Sides* panel rendered its decision. In short, even independent of our interpretation of the KRTA, the claim by Presnell that the Conservancy should have completed its development of the Meadowlark Trail rings

12

hollow. He has consistently and repeatedly worked to prevent that very development from occurring.

The district court did not err when it relied on the *Sides* opinion to deny Presnell's claims under the KRTA. And we, like the court in *Sides*, conclude that the KRTA does not require—or even allow—a court to divest the Conservancy of its ability to develop its trail easement across Presnell's land.

2. *The* Sides *panel correctly found that a recreational trail easement serves a public use and thus cannot be acquired through adverse possession.*

Presnell next challenges the district court's judgment in favor of the Conservancy on his adverse possession claim. The district court found, largely based on this court's conclusion in *Sides*, that an easement for a recreational trail serves a public use and thus cannot be adversely possessed. Again, Presnell argues that *Sides* was wrongly decided. We disagree.

In Kansas, the elements for a claim of adverse possession are codified in K.S.A. 60-503. See *Ruhland v. Elliott*, 302 Kan. 405, 410, 353 P.3d 1124 (2015). This statute, which is included in the statutory article concerning limitations periods for civil actions involving real estate, states that "[n]o action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership" for 15 years. K.S.A. 60-503. Kansas courts largely use these same elements to evaluate whether a prescriptive easement exists. See *Pyle v. Gall*, 317 Kan. 499, 503-04, 531 P.3d 1189 (2023).

But as *Sides* noted, the elements in K.S.A. 60-503 are not the only parameters for adverse-possession and prescriptive-easement claims. Most notably for our discussion,

13

K.S.A. 60-509 clarifies that the limitations periods on claims involving real property do not apply to any land "given, granted, sequestered or appropriated to any public use." The *Sides* panel found that a recreational trail on a railbanked easement served a public use consistent with this provision and thus concluded that the trail easement could not be acquired through adverse possession. 56 Kan. App. 2d at 1119.

Presnell challenges this conclusion, arguing the *Sides* definition of public use is overly broad and effectively exempts from adverse possession "any property that can be *used by the public*, for any reason or purpose." He asserts that this same analysis could apply to the parking lot of a private business or a private sports complex. But this argument is not a reasonable reading of the *Sides* analysis.

The *Sides* decision meticulously documented the legislative history of the NTSA and concluded that one of the reasons Congress adopted that Act was to "create trails that the public may enjoy" and "'provide for the ever-increasing outdoor recreation needs of an expanding population.'" 56 Kan. App. 2d at 1117 (quoting 16 U.S.C. § 1241[a] [2012]). We find the reasoning persuasive and reach the same conclusion. The purpose of the Meadowlark Trail is to offer a recreational park for public use, while maintaining the ability to use that land for railroad purposes in the future should the need arise.

Because the Meadowlark Trail serves a public use, K.S.A. 60-509 exempts the Conservancy's trail easement from adverse possession by another. The district court correctly granted judgment in the Conservancy's favor on Presnell's adverse-possession claim.

3. *The record supports the district court's findings regarding the Conservancy's counterclaim and request for punitive damages.*

Presnell also challenges the district court's judgment on the Conservancy's counterclaims. He argues that the district court erred in finding that he had trespassed on the Conservancy's trail easement, asserting that trespass was a logical impossibility since he owned the property subject to that easement. He also asserts the court erroneously found that the Conservancy was entitled to "exclusive possession" of that easement and that the court abused its discretion when it ordered him to pay $15,000 in punitive damages.

After reviewing the district court's ruling, we agree with Presnell that some of the language the district court used was imprecise. We thus strike the portion of the district court's ruling that purports to grant the Conservancy greater rights than it otherwise may exercise as the holder of the trail easement. But the essence of the court's ruling—that Presnell repeatedly and intentionally obstructed the Conservancy's ability to use and develop its easement—finds ample support in the record and Kansas caselaw. And the court's punitive damages assessment was reasonable, given the evidence surrounding Presnell's actions.

3.1. *The record supports the district court's finding that Presnell intentionally interfered with and obstructed the Conservancy's ability to develop its trail easement.*

Following the bench trial in this case, the district court entered judgment in favor of the Conservancy on its counterclaim that Presnell had intentionally interfered with and obstructed its ability to develop the Meadowlark Trail. In its written decision explaining that ruling, the court laid out the extensive efforts by Presnell and his father to impede development of that trail since 1997. The court then found

15

"based upon all of the evidence in the proceedings in this case, that Mr. Presnell has, as alleged by [the Conservancy], '*continuously and intentionally trespassed and unreasonably interfered with the rights of* [*the Conservancy*]' *to exclusive possession of the Meadowlark Trail*. Even if the Court ignores the actions taken in 2001 at which time he placed a fence allegedly at the direction of his father but without the permission from the landowner on the other side of the right-of-way . . . , and also ignores all of the actions taken in the 17 years prior to filing this suit, six months after this Court's ruling in *Sides* he imposed his own remedy for the perceived wrong ruling of this Court. Going further, even after this Court was affirmed in the rulings Mr. Presnell complains of, he did not remove the barriers, nor did he remove the barriers once the appeals in the *Sides* case were exhausted by the U.S. Supreme Court refusing to grant certiorari in May of 2020. As of the final date of trial in this case, February 6, 2023, the barriers placed by Mr. Presnell remained in place and he persisted in the legal claims that have been rejected. The whole of the conduct provides clear and convincing evidence of trespass and unreasonable interference with [the Conservancy's] rights.

"The Court therefore enters an order granting Central Kansas Conservancy, Inc.[,] *the exclusive right to possession and control of the former railroad right-of-way* granted to it through the Donative QuitClaim Deed on April 16, 1997 and enters a permanent restraining order against Tracy Presnell to prevent him from taking any further action to interfere in any manner with that possession and control. Mr. Presnell is ordered to remove any and all barriers placed on that portion of the right-of-way that crosses and borders his property and is further directed not to again place any barrier for any reason on that property or any other portion of the Meadowlark Trail in McPherson County." (Emphases added.)

On appeal, Presnell does not dispute the district court's finding that he intentionally blocked the Conservancy from accessing its easement and interfered with its ability to develop the trail. But he argues that the district court's judgment cannot stand because (1) the court found that he was trespassing on property he owned and (2) the court mistakenly found that the Conservancy had the "exclusive" right to "possession" of the easement. Presnell cites to the Restatement of Torts, Restatement of Property, and past Kansas Supreme Court cases to argue that the Conservancy's easement is a nonpossessory interest in the land that does not afford it standing to sue for trespass. For

its part, the Conservancy cites this court's decision in *Sides* and argues that it has the exclusive right to possess and develop the former railway right-of-way into a recreational trail. In our view, both arguments miss the mark to some extent.

A trespass claim arises when a person intentionally enters another's property without any right, lawful authority, or express or implied invitation or license. *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 22, 378 P.3d 1090 (2016). The authorities Presnell cites generally discuss whether an easement holder has standing to eject others from the property in a trespass action—that is, whether the easement holder may sue to enforce greater rights than they hold, not whether they may enforce their legal rights under the easement. Thus, those authorities do not advance his claim that the district court erred. Likewise, the Conservancy's reliance on *Sides* is misplaced, as nothing in that opinion purported to give the Conservancy more extensive rights than it received under the trail easement.

Our review of Kansas law has not revealed an instance where an appellate court in this state has described the obstruction of an easement by a property owner whose land is crossed by that easement as a trespass. A handful of other courts across the country have used that language to describe conduct akin to Presnell's actions here. See, e.g., *Amada Family Limited Partnership v. Pomeroy*, 494 P.3d 633, 650 (Colo. App. 2021) (recognizing that, under Colorado law, "an easement holder may be entitled to economic damages for trespass when the owner of the servient estate obstructs an easement"); *Gerhart v. Energy Transfer Partners, L.P.*, No. 1:17-cv-01726, 2020 WL 6487484 (M.D. Pa. 2020) (unpublished opinion) (denying motion to dismiss and allowing trespass action against homeowner to proceed when homeowner had allegedly attempted to stop construction of pipeline on energy company's easement). But despite Presnell's urging, we need not resolve that question here.

Kansas caselaw recognizes that it is the substance of a claim, and not the label attached by the parties or the district court, that controls our analysis. See *In re Marriage of Williams*, 307 Kan. 960, 983, 417 P.3d 1033 (2018). And Kansas courts have long held that an easement holder—that is, the holder of the dominant estate—has a cognizable claim against the holder of the servient estate who unreasonably impedes or interferes with their easement rights. See *Aladdin Petroleum Corp. v. Gold Crown Properties, Inc.*, 221 Kan. 579, 586, 561 P.2d 818 (1977).

The district court here found that Presnell had intentionally and repeatedly obstructed the Conservancy from accessing the stretch of the Meadowlark Trail that traversed his property. That the district court described these actions as "trespass" is largely irrelevant. What matters for the purposes of our analysis is that the district court's finding regarding Presnell's conduct is supported by the record and undisputed on appeal.

We next turn to the district court's description of the Conservancy's easement as an "exclusive" right to "possession" of the Meadowlark Trail. Our review of the court's decision shows that phrasing was indeed imprecise. Presnell correctly notes that even if the Conservancy "has a right to use the easement for a trail"—which it does—that easement only carries limited rights and does not grant the Conservancy exclusive possession and control of the right-of-way. He points to one of his earlier cases when a panel of this court rejected the Conservancy's claim that its trail easement was akin to fee ownership. See *Presnell*, 2022 WL 1436058, at *3.

We agree that the language used by the district court to describe the Conservancy's easement rights was poorly worded. An easement conveys less than fee simple to property. The owner of the property transversed by an easement necessarily maintains the ability to use that property—that is, to enjoy and use the servient estate—so long as that enjoyment does not interfere with the use of the easement. See *Aladdin Petroleum Corp.*, 221 Kan. at 586. The district court's ruling thus overstepped when it framed the

18

Conservancy's easement right as one of "exclusive possession." But the injunctive relief ordered by the district court—preventing Presnell from interfering in any way with the development of the Meadowlark Trail and ordering the permanent removal of any barriers or other efforts to impede that development—was entirely reasonable and warranted. We affirm that judgment.

3.2. *The district court properly considered the necessary factors to assess punitive damages against Presnell and did not err by ordering him to pay $15,000.*

Presnell's final argument on appeal challenges the district court's imposition of $15,000 in punitive damages against him. Presnell does not argue that the district court failed to follow the proper procedure for awarding punitive damages or that punitive damages could not be awarded under these circumstances. See *Capitol Federal Savings & Loan Ass'n v. Hohman*, 235 Kan. 815, Syl., 682 P.2d 1309 (1984) (recognizing punitive damages may be available when only equitable relief is granted). Instead, he asserts that the district court ordered punitive damages based not on the evidence at trial or as a result of his conduct in impeding the Conservancy's easement, but because the court was biased against him given his successive lawsuits concerning the trail. The record does not support these assertions.

A district court engages in a two-step process when assessing punitive damages against a party. See K.S.A. 60-3702. It first determines whether damages are allowed and then turns to the amount of punitive damages, if any, that is appropriate under the circumstances. In doing so, the court considers:

"(1) The likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct;

"(2) the degree of the defendant's awareness of that likelihood;

"(3) the profitability of the defendant's misconduct;

"(4) the duration of the misconduct and any intentional concealment of it;

19

"(5) the attitude and conduct of the defendant upon discovery of the misconduct;

"(6) the financial condition of the defendant; and

"(7) the total deterrent effect of other damages and punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, compensatory, exemplary and punitive damage awards to persons in situations similar to those of the claimant and the severity of the criminal penalties to which the defendant has been or may be subjected." K.S.A. 60-3702(b)(1)-(7).

An appellate court defers to a district court's factual findings regarding whether punitive damages are warranted when those findings are supported by sufficient evidence in the record. *York v. InTrust Bank, N.A.*, 265 Kan. 271, 306-07, 962 P.2d 405 (1998); see also *Alain Ellis Living Trust v. Harvey D. Ellis Living Trust*, 308 Kan. 1040, 1047-48, 427 P.3d 9 (2018) (describing clear and convincing standard). We review the court's ultimate judgment as to whether punitive damages are warranted and the extent of any punitive damages assessed for an abuse of discretion. See *Mynatt v. Collis*, 274 Kan. 850, 883-84, 57 P.3d 513 (2002). A judicial officer abuses their discretion if they render a decision that is arbitrary, fanciful, or unreasonable or one that is based on legal or factual error. *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022).

The district court's written punitive-damages ruling extensively discussed Presnell's conduct giving rise to that award. Contrary to Presnell's claims on appeal, that conduct did not center on the decades-long opposition to the Meadowlark Trail's development. Rather, it focused on Presnell's actions blocking or limiting trail development during the four years after the *Sides* decision. In fact, the district court "explicitly reject[ed] any suggestion or inference that conduct that preceded December of 2018 is being considered by the Court in making its decision."

The district court found that Presnell's intentional obstruction of the trail prevented any large machinery from accessing the trail to deliver gravel, blade the gravel, or do any other work, and it prevented the public from accessing that portion of the trail. This

20

conduct continued even after this court held in *Sides* (a case Presnell actively participated in as a witness) that the Conservancy had the right to develop the trail. The district court then noted that Presnell's argument that he was not bound by the *Sides* holding "was disingenuous on the part of Mr. Presnell." It found that the current litigation "was a ploy at delay, rather than a test of legal issues."

The district court found that Presnell had caused serious harm to the Conservancy and the public by limiting development of the trail. The district court also credited the Conservancy's concern of "vexatious" litigation, noting that Presnell had brought two other lawsuits against the Conservancy already and there was a need to deter this conduct. After weighing these factors, the district court ordered Presnell to pay $15,000 in damages.

The district court did not err in its assessment of punitive damages against Presnell. It carefully considered the statutory factors under K.S.A. 60-3702(b) and determined that these damages were appropriate to both punish Presnell's past actions and to deter future obstructive or vexatious conduct. Taken in context, the district court's order makes clear that the damages award was directly tied to Presnell's sustained blockade of the trail. While the district court did consider other conduct such as Presnell filing multiple lawsuits on the matter, that conduct was part and parcel of his main objective: to prevent the Conservancy from developing the trail. The district court's order simply acknowledged that Presnell utilized other tactics as a means to demonstrate his ambivalent attitude towards the Conservancy's rights as the easement holder.

We also note that Presnell—who represents himself in this appeal—has brought these claims in his individual capacity, not on behalf of the Presnell Trust. Although Presnell, who is one of the trustees, attempted to represent the Trust in the early stages of this litigation, the district court correctly noted that trustees who are not attorneys may not represent a trust (or any other entity) in judicial proceedings. See *Schaake v. City of*

*Lawrence*, 60 Kan. App. 2d 88, 95-96, 491 P.3d 1265 (2021), *rev. denied* 315 Kan. 969 (2022). Through a series of transactions, Presnell and his wife and co-trustee then transferred the subject property to Presnell individually. We caution, however, that it has long been the law in Kansas that the decisions of a court concerning property are binding on the property owner and their successors in title. Accord *In re Tax Appeal of City of Wichita*, 277 Kan. 487, 506, 86 P.3d 513 (2004); *Hawkinson v. Bennett*, 265 Kan. 564, 589, 962 P.2d 445 (1998). The principle of issue preclusion recognizes that "once a court has determined a material factual issue, a party"—or a person in privity with that party— "may not secure a new determination contrary to that finding in later litigation." *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 266, 261 P.3d 943 (2011).

The development of the Meadowlark Trail has been subject to litigation almost since the Conservancy first acquired its trail easement in 1997. This is the third lawsuit Presnell himself has initiated to challenge the Conservancy's action and the second time this court has considered many of the issues raised in this case. The district court did not err when it took this history into consideration, along with the other factors under K.S.A. 60-3702(b) and concluded that punitive damages were appropriate. We do not find this conclusion—or the amount of the punitive damages assessed here—to be unreasonable.

We affirm the judgment of the district court.

Affirmed.